## No. 11,770.

### GLOBE NATIONAL BANK v. MCLEAN.

Decided June 11, 1928. Rehearing denied July 9, 1928.

208

Mr. W. D. WRIGHT, Mr. W. D. WRIGHT, JR., Messrs. GARWOOD & GARWOOD, Mr. EVERETT BELL, for plaintiff in error.

Messrs. HODGES, WILSON & ROGERS, Mr. HENRY C. VIDAL, for defendant in error.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

THESE parties appear here in the same order as in the trial court, and for convenience we refer to them as there.

Plaintiff brought this action to recover of defendant as one of the guarantors of a promissory note. A demurrer to the complaint was overruled and defendant answered. A demurrer to the answer was overruled in part and sustained in part. A reply was filed and the cause

was tried to the court without a jury and submitted on written briefs. June 1, 1926, the court found in favor of defendant and ordered judgment entered thereon. Apparently plaintiff's counsel were not present at the time for the court ordered its exception saved and granted it ten days in which to file a motion for new trial. That motion was accordingly filed and in it the alleged errors were specifically set forth. The motion was overruled and judgment entered June 14. To review that judgment plaintiff prosecutes this writ.

Prior to September 20, 1920, plaintiff and ''The City Bank'' were banking corporations engaged in that business in the city of Denver, and defendant was a director and vice president of the latter. On said date plaintiff bought the assets of the City Bank under a contract which provided for the execution of a ''guaranty agreement.'' Said agreement was accordingly executed and signed by defendant and eight others as representatives of the City Bank. Defendant's liability thereunder is the main question requiring consideration here.

The contract for the sale of the City Bank's assets was signed on behalf of the City Bank by defendant and two other of its directors, and on behalf of plaintiff by three of its directors: Paragraph 5 of that contract reads:

''5. It is understood and agreed that the members of the board of directors of said the City Bank shall execute and deliver to said the Globe National Bank a guaranty agreement (a copy of which, marked ''Exhibit B,'' is hereto attached) guaranteeing to said the Globe National Bank the correctness of said general journal and daily statement as a statement of the condition of said the City Bank at the close of business on September 30, 1920, and guaranteeing the payment to said the Globe National Bank of the notes, bonds (except Liberty bonds) and other securities included in said general journal and daily statement.''

Among the provisions of the guaranty contract, exe-

cuted in conformity to said paragraph 5, are the following:

"Whereas, said the Globe National Bank, in making said purchase, desires a guaranty  *  *  * of the payment of its (the City Bank's) notes, bonds and other securities  *  *  *.

"The undersigned jointly and severally guarantee to said the Globe National Bank the payment at maturity or at any time thereafter, on demand, of each and every of the notes, bonds and securities of every kind and nature included in said purchase  *  *  *.

"The undersigned further agree that, in every instance upon the written consent of two members of the liquidation committee of said the City Bank, the time of payment of any of said notes may from time to time be extended by said the Globe National Bank, or new notes payable directly to said the Globe National Bank may be taken in payment thereof, and that with like consent the time of payment of any such new notes may be extended, or other notes taken in payment thereof, all without releasing or in any manner or degree modifying or changing the liability of the undersigned under this contract of guaranty, it being the intent and meaning hereof that the undersigned shall be and remain obligated hereunder to said the Globe National Bank for the payment of all indebtedness represented by said notes payable to the order of said the City Bank, and for all renewals and extensions thereof made in the manner aforesaid."

Defendant was a member of the liquidation committee above mentioned, and also became a member of the board of directors of the Globe National Bank.

Among the notes so guaranteed was one for $47,500. On this there was a default of approximately $23,000, which was paid by four (other than defendant) of the signers of the guaranty agreement. In consideration of such payment the plaintiff released those four from further liability.

Another of the notes so guaranteed was the Curtis note for $20,500. The bank examiner objected to this as an asset of the plaintiff and the signer of it settled by conveying its security to the City Bank, whereupon said note was surrendered to her and marked "paid" on the books of the Globe. As a part of this transaction Skinner (a director of the City Bank and a signer of the guaranty contract) gave to plaintiff his note in lieu of the Curtis note, and took from the City Bank, to secure him against loss by reason thereof, the note of the City Bank secured by the property which Curtis had transferred in payment of her note. Skinner then turned over to plaintiff, as collateral, said note of the City Bank to him, together with its security. All this Skinner did at the request of the liquidation committee. The Skinner note to plaintiff was also signed by "The City Bank Liquidating Committee by W. J. Galligan by George McLean." Galligan also was a member of the liquidating committee. Said note was not paid and plaintiff brought this suit against defendant as a maker of the guaranty contract.

1. If Skinner's note to plaintiff is covered by the guaranty contract the judgment must be reversed. Two well established principles governing the interpretation of contracts must be borne in mind: (a) In case of doubt a contract is construed most strongly against him who drafted it. (b) Where a doubt exists as to the proper construction of a given clause, it should be construed in favor of him for whose protection it was obviously inserted. It should further be observed that the answer herein was filed July 22, 1925, and the replication October 31 following, and that it is a matter of common knowledge in this state, admitted in defendant's brief, and not denied, that the Globe National Bank went into the hands of a receiver October 1, 1925, and has ever since been, and now is, an insolvent institution. Since, on the controlling facts, there is no material conflict in the evidence the findings for defendant are of no moment. Defendant contends that since the Curtis note was "paid," in the

manner hereinbefore described, and since the Skinner note is neither one of those purchased from the City Bank nor a renewal signed by a maker of the original, he is not liable. But his contract was, not to pay said original notes, nor yet to pay renewals executed by the makers of said originals, but "for the payment of all *indebtedness represented by* said notes." It is insisted that the indebtedness represented by the Curtis note has been paid by the Skinner note; although the Globe has never received a dollar thereon and there is nothing to indicate that it ever will. If the defendant and his associates on the liquidation committee had succeeded in having cancelled and returned to the makers all of the original paper bought from the City Bank, but failed to remit to the Globe Bank, certainly the indebtedness to the Globe Bank would not have been discharged. The fact is that the debt due the Globe, represented by the Curtis note, is the identical debt still due the Globe, and now represented by the Skinner note. Curtis has been discharged so far as the Globe is concerned, but the Globe and its depositors have received nothing. The guaranty contract was not a contract for the discharge of the debtors of the City Bank, whose obligations had been transferred to the Globe. Its only purpose was to assure the Globe that the debts evidenced by "each and every of the notes, bonds and securities of every kind and nature" would be paid the plaintiff unless it released the makers without the consent of two members of the liquidating committee of the City Bank. To hold that the words "new notes" refer only to notes signed by the same parties who signed the original paper is to give the contract a strained construction and, as to its primary purpose and intent, to read it out of existence. The Globe Bank was perfectly free to do as it pleased with paper taken over from the City Bank. The guarantors were not concerned with any changes therein unless they were to be held under their contract. In that event their consent had to be obtained. They authorized their agents, two members of the liqui-

dating committee, to give that consent. In the instant case those agents did so. Why, if not to keep the guaranty good?

2. Moreover, were defendant otherwise released from his guaranty by reason of the substitution of the Skinner note for the Curtis note he would not be permitted to avail himself of that defense under the circumstances disclosed by this record. As a director and vice president of the City Bank he was a maker of the guaranty agreement. As a director of the plaintiff he was obliged to insist upon its enforcement. As a member of the liquidating committee he was instrumental in imposing upon the Globe a worthless obligation in lieu of a good one. His relation to both banks and their depositors was one of trust, in the discharge of which he is held to the utmost good faith. His conduct having resulted in serious loss to the institution of which he was a director, and advantage to himself in an equal sum, he can not be heard to plead the strict letter of the contract in extenuation thereof.

3. The defendant says that the release of his four coguarantors without his express consent released him. But section 5125, C. L. 1921, was passed in 1899 and the cases cited in support of the release were decided by this court long prior thereto. Said section is not mentioned in the briefs and the record does not indicate that it was ever brought to the attention of the trial court. It reads: "A creditor of joint debtors may release one or more of such debtors, and such release shall operate as a full discharge of such debtor or debtors so released, but such release shall not release or discharge or affect the liability of the remaining debtor or debtors. Such release shall be taken and held to be a payment in [on] the indebtedness of the full proportionate share of the debtor or debtors so released."

That this act precludes defendant's complete release is clear. To what extent, if any, it reduces his liability we can not here determine. The trial court has yet to con-

sider the effect of said release, the question of the sufficiency of the consideration for it, whether defendant (by reason of the action of his agents, the liquidating committee) gave his express or implied consent thereto, and the right of defendant, in view of his duty as a director of plaintiff, to claim any advantage under it. All this may call for some amendment of the pleadings and for the production of additional evidence.

The judgment is accordingly reversed and the cause remanded for further proceedings in conformity herewith.

MR. CHIEF JUSTICE DENISON, MR. JUSTICE WALKER and MR. JUSTICE BUTLER dissent.

MR. JUSTICE BUTLER dissenting.

As I read the record, the facts relating to the Curtis note and the Skinner note are as follows: Among the assets sold by the City Bank to the Globe National Bank, was a note for $20,500, signed by Mary A. Curtis, and secured by a second mortgage of land and water rights. The federal bank examiner later objected to that note as an asset of the Globe National Bank. Thereupon, Mrs. Curtis conveyed the land and water rights to the City Bank; her note was cancelled and surrendered to her, and was noted "paid" on the books of the Globe National Bank. The City Bank gave to Mark A. Skinner its note for the amount of the Curtis note with interest, and secured its note by a trust deed of the property conveyed to the City Bank by Mrs. Curtis. This City Bank note was given to Skinner to secure him against loss by reason of his making and delivering to the Globe National Bank his note for the amount of the Curtis note with interest. At the request of the liquidating committee, Skinner, on November 27, 1921, made and delivered such note. It was signed as follows: "Mark A. Skinner. The City Bank Liquidating Committee, By W. J. Galligan, Chairman." The note referred to in the majority opinion was given July 17, 1923, as a second, third or subsequent renewal

of the original Skinner note. It is signed, as stated in the majority opinion, not only by Skinner, but also by "The City Bank Liquidating Committee by W. J. Galligan by George McLean." When he gave the first note, Skinner endorsed and delivered to the Globe National Bank, as collateral security, the secured note that he had received from the City Bank.

1. Is the guaranty broad enough to cover the Skinner note? Let us analyze the contract. The payment of the notes included in the purchase—the Curtis note was one of them—is guaranteed. Upon written consent of two members of the liquidating committee, the time of payment of any of said notes may be extended from time to time without releasing the guarantors from liability. So far, of course, it is clear that the guaranty does not cover the Skinner note. Upon consent of two members of the committee, new notes, payable directly to the Globe National Bank, may be taken in payment of the original notes, and the time of payment of any such new notes may be extended, "or other notes taken in payment thereof," without releasing the guarantors from liability. The plaintiff contends that the quoted words, "or other notes taken in payment thereof," apply to the Skinner note. The contract was drawn on behalf of the guarantors by one of them. It is true that, in case of ambiguity, a contract should be construed most strongly against the one who draws it, or causes it to be drawn. If the foregoing provision stood alone, we might be able to give to the contract the construction contended for by counsel for the plaintiff. But it does not stand alone. In the very same paragraph, immediately following the provision in question, there is an express statement of the intent of the parties and of the meaning of the words used: " * * * it being the intent and meaning hereof that the undersigned shall be and remain obligated hereunder to said the Globe National Bank for the payment of all indebtedness represented by said notes payable to

the order of said the City Bank and for all renewals and extensions thereof made in the manner aforesaid.''

This indicates that the guaranty is limited to the payment of the original indebtedness represented by the notes payable to the order of the City Bank and sold to the Globe National Bank, and to all renewals and extensions thereof. The final words, ''made in the manner aforesaid,'' show that by the words, ''other notes taken in payment thereof,'' were meant other notes given by the makers of the old notes. In other words, new notes given by the makers of the old notes. In other words, new notes given by the makers of the old notes to take up the latter, though referred to as taken in ''payment'' of the latter, are to be considered (as is customary in banking circles) as renewals or extensions of the old notes. Other circumstances harmonize with this construction. The sale agreement, signed on behalf of both the seller and the purchaser, refers to the guaranty agreement as attached thereto, and as ''guaranteeing the payment to said the Globe National Bank of the notes　*　*　* included in said general journal and daily statement.'' The notes sold were payable to the order of the City Bank; hence the provision in the guaranty contract that upon consent of two members of the liquidating committee, and without releasing the guarantors from liability, ''new notes payable directly to said the Globe National Bank may be taken in payment'' of the old notes; which transactions, as we already have seen, are regarded as merely renewals or extensions of the old notes, and not as absolute payment thereof. It is highly improbable that the guarantors intended to permit the plaintiff to take, in payment of the purchased notes, the obligations of other persons, and leave the guarantors still liable on their guaranty; because they might thus become guarantors for persons whom they do not know. Nor would the requirement that the written consent of two members of the liquidating committee shall first be obtained fully protect the guarantors against the danger. The contract

neither requires nor justifies a construction that would permit such unreasonable results. It was not contemplated by the parties that the guaranty should extend to and cover the indebtedness of third persons, or notes representing such indebtedness; hence, the defendant is not liable on his guaranty by reason of the nonpayment of the Skinner note.

There can be no sound argument to the contrary based upon a supposed distinction between a note and the indebtedness represented by the note. The indebtedness represented by the Curtis note payable to the order of the City Bank was the indebtedness of Mrs. Curtis; and the guaranty covered both the indebtedness and the note. The indebtedness represented by the Skinner note is the indebtedness of a person other than Mrs. Curtis. The Skinner note is not a renewal or an extension of either the Curtis note or of the indebtedness represented by the Curtis note; and, therefore, it is not covered by the guaranty. If the holder of a note receives absolute payment thereof, and cancels and surrenders the note, and thereafter sues upon the indebtedness formerly represented by the note, he, by his failure to recover, would be made to realize the shadowy character of the distinction supposed to exist between a note and the indebtedness it represents.

2. But the plaintiff contends that, in any event, the Curtis note is covered by the guaranty contract, that the Curtis note has never been paid, and that the defendant is liable on his guaranty by reason of such nonpayment. The trouble with this contention is that it assumes that the note has not been paid. Mrs. Curtis deeded the land and water rights to the City Bank. That bank gave its note to Skinner, secured by a trust deed of the land and water rights. Skinner gave his note to the plaintiff, and pledged the note of the City Bank as collateral security. The plaintiff accepted the Skinner note, so secured, as payment of the Curtis note, and on the books of the plaintiff the Curtis note was noted "paid." The note was

cancelled and returned to Mrs. Curtis. Thereafter, the plaintiff wrote to the deputy comptroller of the currency, at Washington, a letter stating that, "The real estate loans mentioned all have been disposed of." The Curtis loan was a real estate loan. In a suit brought by this plaintiff against Mark A. Skinner and others, the plaintiff alleged, in its amended complaint, that the Skinner note was taken in payment of the Curtis note. The defendant in the present case offered that amended complaint in evidence, but an objection to its introduction was sustained—why, it is hard to understand. However, no cross-error is assigned.

From the evidence, it is clear that Mrs. Curtis is no longer liable on her note, or on her indebtedness formerly represented thereby; that if she were sued on either such note or such indebtedness, no judgment could be rendered against her. The trial court found that her note was paid. The evidence amply supports the finding. The defendant, therefore, cannot be held liable on his guaranty of the payment of the Curtis note, or of the indebtedness at one time represented by that note.

3. Upon the nonpayment of the Curtis note, the plaintiff had the right to pursue one of three courses: (1) With the written consent of two members of the liquidating committee, it could extend the time of payment of the note, either by an extension agreement or by taking a new note signed by Mrs. Curtis; in which case the guarantors would remain liable on their contract. (2) It could demand that the guarantors pay in cash the amount of the note, and, if they failed to comply with such demand, it could sue them on the guaranty contract. (3) It could accept in lieu of cash, in payment of the Curtis note, a note not covered by the guaranty contract, e. g., the note of a third person; in which case the guarantors would no longer be liable on their contract. The plaintiff chose the third course, and thereby released the guarantors. The fact that subsequent events prove that

such choice was unwise, that it would have been better for the plaintiff to choose the first course and require additional security, or to choose the second course, does not entitle the plaintiff to a judgment saving it, at the expense of the defendant, from a loss (unforeseen at the time of the transaction) that resulted from the plaintiff's own voluntary choice.

4. In the majority opinion, it is said that, even if the transaction resulted in "otherwise" releasing the defendant from liability, he could not, by reason of his relations to the parties concerned in the deal, avail himself of such release. True, he was a director of the plaintiff bank. He was, however, but one of several directors. There is no evidence that he induced or persuaded the plaintiff to accept the Skinner note in payment of the Curtis note; or that he made any representation with reference to the value of the Skinner note, or of the collateral securing it; or any representation concerning the solvency of Skinner; or that he knew, or had any reason to believe, that the Skinner note was, or would prove to be, uncollectible. In fact, there is no allegation in the complaint and there is no proof that the note is uncollectible. That it has not been paid is admitted. The defendant testified: "I took no active part in the substitution of the Skinner note for the Curtis note. Mr. Galligan handled that matter. I knew about it after it was made. * * * didn't know of it until after it had been done." When the defendant signed the Skinner note, it is fair to assume in view of the defendant's testimony, he did so to carry out the arrangements that had already been made by Galligan. In short, there is no evidence whatever that, in the transaction, the defendant was guilty of fraud or breach of trust, and there is no evidence that supports the conclusion that the defendant is estopped to rely upon the release. This no doubt was the belief of the numerous and able lawyers for the plaintiff, when they said in their brief: "As plaintiff relies wholly on the

guaranty of the original indebtedness, and as the final decision herein must turn upon the construction of said guaranty agreement by the Supreme Court, counsel respectfully invite the special attention,'' *etc.*

Entertaining the foregoing views, it is impossible for me to concur in the majority opinion. The judgment of the district court is right. It should be affirmed.

Mr. Chief Justice Denison and Mr. Justice Walker concur in this dissenting opinion.