## No. 14,146.

SIX STAR LUBRICANTS COMPANY *v.* MOREHOUSE.
(74 P. [2d] 1239)

Decided December 6, 1937.   Rehearing denied January 10, 1938.

Messrs. BARTELS, BLOOD & BANCROFT, for plaintiff in error.

Messrs. CHAMBERS & LYMAN, Mr. CHARLES H. HAINES, for defendant in error.

*In Department.*

MR. JUSTICE KNOUS delivered the opinion of the court.

THIS action was brought by the defendant in error, to whom we shall refer as plaintiff, to recover from plaintiff in error, which we shall call defendant, royalty accruing between April 9 and August 31, on greases and lubricants allegedly compounded under what is known as the Pettit patents and sold by defendant as licensee thereunder, claimed to be due pursuant to a written contract dated October 26, 1925, which modified a pre-existing contract between the parties dated August 7, 1922. The cause was tried before a jury in the court below and judgment rendered for the plaintiff in accordance with the prayer of his complaint.

This judgment is assailed on three grounds: First, that plaintiff wholly failed to establish that defendant used the Pettit formulae or any patented modification or improvement thereof in making any lubricants sold by it after April 9, 1934; second, that defendant's obligation to pay a royalty terminated on April 9, 1934, the admitted date of the expiration of the last of the two Pettit patents involved; third, that plaintiff should not be entitled to recover for royalty subsequent to April 9, 1934, on the theory that upon the expiration of the patent rights the covenant in the contract providing that no person other than the defendant should have the right to make greases according to the Pettit formulae, was impossible of performance by the plaintiff.

The record necessitates a reversal of the judgment on the first ground assigned.

The contract of October 26, 1925, licensed the defendant to manufacture greases and lubricating compounds according to the Pettit formulae "and any modi-

fications, improvements or extensions of said patent rights," and therein defendant agreed, "as long as it manufactures, jobs or sells any greases or lubricating compounds made according to the said formulae, or any modifications or improvements thereof, to pay to the party of the first part [the plaintiff] as a royalty or license fee the sum of one-eighth of one cent per pound for every pound of greases and lubricating compounds" manufactured or sold by them. It is evident from these provisions of the contract, and regardless of the duration of the term thereof, that in any event defendant's obligation to pay royalty continued only so long as it manufactured, jobbed or sold lubricating compounds made according to the formulae or any modifications or improvements thereof. We think it definite, in view of the wording of the previous portion of the contract above quoted, that the modifications or improvements of the formulae are limited to *patented* modifications or improvements. By his complaint plaintiff alleged that since April 9, 1934, "and until the 31st day of August, 1934, according to statements furnished by the defendant to the plaintiff, the said defendant has sold the aggregate amount of 153,637 pounds of * * compounds *under the terms of said agreement."* The defendant admitted that during the period mentioned it had sold the stated amount of greases, but by general denial put in issue the plaintiff's allegation that the lubricants so sold were compounded under the terms of the agreement. It was, therefore, necessary for plaintiff to prove that the 153,637 pounds of grease, admittedly sold by the defendant between the dates mentioned, were in fact prepared under the Pettit formulae. The defendant strenuously asserts that no proof whatsoever was offered by plaintiff in support of this allegation, and we have no doubt that the record supports this contention as to the greases sold by it between July 1 and August 31, 1934. On July 16, 1934, the defendant, on its billhead, sent a statement addressed to plaintiff, marked "royalty acct."

showing that during the months of January to June, 1934, inclusive, it had sold 164,901 pounds of lubricating compounds. This statement was admitted in evidence as "Exhibit T." On August 17, 1934, the defendant wrote a letter to plaintiff stating that defendant's attorneys had advised "us that after the expiration of the patent we are no longer under any liability for royalties to you." It is then therein stated, as also was pleaded, that "Exhibit T" was sent through mistake and a detailed statement was incorporated showing the amount of greases and lubricants sold from January 1 up to and including April 9, 1934, as being 75,977 pounds. This letter likewise was received in evidence.

It will be observed that when defendant sought to correct the original statement by this letter it did not contend that after April 9 and until July 1, 1934, it had not sold lubricants compounded in accordance with the Pettit formulae, but sought only to avoid liability because the patents had expired on April 9. The jury, acting within its province, by its general verdict in favor of the plaintiff found adversely to defendant's contention that the contract terminated upon the expiration of the patents and that that mistake did not relieve defendant from the effect of "Exhibit T." Thus this statement had the evidentiary effect of admitting that up to July 1, defendant had made and sold lubricants for which it would have been liable for royalty unless relieved therefrom by the fact that the patents had expired. We must conclude, therefore, that the statement "Exhibit T" was prima facie sufficient to establish defendant's liability for royalties to July 1st. The record, however, is devoid of any evidence on the part of the plaintiff that after July 1st and to August 31st, the defendant company manufactured any of the compounds, sold by it, in accordance with the Pettit formulae and under the contract relied upon.

The verdict returned was in exact accord with the prayer of the complaint and obviously was based on a

royalty of one-eighth of a cent per pound for the 153,637 pounds of greases alleged to have been manufactured and sold by defendant from April 9 to August 31, 1934.

Viewing the situation in the light most favorable to plaintiff and in this connection assuming that the contract did not expire with the patents, nevertheless we must conclude that the evidence in the particulars mentioned was not sufficient to support the verdict.

Since the case must be remanded for new trial, we deem it proper to express our views upon the second and third contentions of defendant.

The evidence shows that on August 7, 1922, the parties entered into a contract whereby the plaintiff, who was the assignee of the patents involved, granted to the defendant the exclusive right to compound greases and lubricants according to the patented formulae in Colorado and five nearby states *during the life of said patents,* in consideration of which the defendant agreed to pay a royalty of one-eighth of a cent per pound for lubricants manufactured under the patents for the first year in which the agreement was effective, and thereafter during the term thereof at the rate of one-half cent per pound. Until 1925 the parties worked under this contract, excepting that during this period defendant protested its inability to pay more than one-eighth cent royalty, but promised to pay more whenever its business became sufficiently prosperous to justify this, and during the latter part of the period corresponded with the plaintiff with a view of having the contract modified so as to require the payment of only a flat one-eighth cent instead of the one-half cent royalty therein provided. In October, 1925, the plaintiff, who apparently resided in California, came to Denver and while there had a conference with the officers of the defendant company culminating in a visit to the office of the attorney for the company, and as a result of which the contract of October 26, 1925, drawn by defendant's attorney, was executed. This contract was declared to be a modification of the previous

contract of August 7, 1922, and exclusively licensed the defendant to manufacture greases and lubricating compounds according to the patents "and any modifications, improvements or extensions of the said patent rights" in forty states instead of six as provided in the original contract, at a royalty of one-eighth cent per pound, "as long as it manufactures, jobs or sells any greases or lubricating compounds made according to the said formulae, or any modifications or improvements thereof."

While paragraph one of the modified agreement is substantially like the first paragraph of the original contract, the words, "during the life of said patents" is omitted from the modified agreement and at no place therein is it expressly provided that the new agreement should terminate at the expiration of the patents or that the liability of the defendant for royalties would thereupon cease as provided in the original contract.

The plaintiff testified, and the correspondence between the parties introduced in evidence substantiated his testimony, that it was the desire of the defendant, in the first instance, to have the original contract modified only to the extent of reducing the defendant's royalty from one-half to one-eighth cent per pound during the term of the patents. He testified that in the conferences with the officers and attorney of the defendant preceding the execution of the new contract, he rejected this arrangement and that the new contract, by which the royalty was reduced to one-eighth cent per pound, was not contingent upon the termination of the patent rights but was to remain in force so long as the defendant continued to manufacture or sell lubricating compounds made according to the patented formulae and that it was upon this consideration that he signed the new contract. The defendant, while conceding that uncertainty exists in the new contract with reference to its effective term, argues that the limitation contained in the original contract must be read into the new contract and the defend-

ant's obligation to pay royalty terminated as of the date of the expiration of the last Pettit patent.

■ There is no legal inhibition against a party contracting to pay royalty on a patented article or formula for a period beyond the date of the expiration of the patents. 48 C. J. 277, §451; *Mitchell v. Hawley,* 16 Wall. (U.S.) 544, 21 L. Ed. 322; *Pressed Steel Car Co. v. U. P. R. R. Co.,* 270 Fed. 518.

■ Further, in the case of ambiguity, uncertainty or indefiniteness, a contract must be interpreted most strongly against the party who drew it. *Platte Valley Co. v. Lallier Const. Co.,* 91 Colo. 317, 14 P. (2d) 1079; *Morath v. Perkins,* 86 Colo. 101, 278 Pac. 611; *Globe Nat. Bank v. McLean,* 84 Colo. 207, 269 Pac. 9.

Under these circumstances, we do not believe that we should declare, as a matter of law, that the contracts of October 26, 1925, terminated upon the expiration of the patents. This controversy was submitted to the jury in the proceeding before us upon correct and proper instructions and, in the event of a retrial of the cause, should again be treated in the same manner.

■ We do not believe the alleged defense presented by the third contention of defendant should be considered upon retrial of the case. As has been mentioned, it thereby is asserted that plaintiff should not recover because of his inability to perform his promise, that no other person, corporation or partnership has or should have the right to use said formulae so long as defendant engages in the manufacture of said lubricants, it being evident that after the expiration of the patents any one legally would be at liberty to use the formulae. Under no theory could this matter as pleaded be vital in the final disposition of the case. If it is determined upon a retrial that the contract expired with the patents, this issue would fall with the contract. If, on the other hand, it should be found that the term of the contract is not affected by the expiration of the patents, the fact that the exclusive protection afforded by the patents had

ended by operation of law and through no act of the plaintiff would not make available the defense of impossibility of performance by plaintiff. When the parties entered into the contract they knew of the expiration dates of the patents, and if defendant saw fit to contract for royalty beyond such a time, it may not now complain of an anticipated condition brought about by operation of law. It is our conclusion that the only effect of this phase of the agreement is to preclude the plaintiff, during the life of the contract, from granting any license to any other person to manufacture or sell lubricants under these formulae within the states mentioned, which it is not alleged he did.

The judgment is accordingly reversed and the cause remanded for further proceedings not inconsistent with this opinion.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE BOUCK and MR. JUSTICE YOUNG concur.