**William Tarren TATE**

v.

**Ellsworth H. LEWIS, Tate Pipe Linings, Inc., and Raymond Concrete Pile Company.**

Civ. No. 53–507.

United States District Court, D. Massachusetts.

Dec. 17, 1954.

Joseph M. Hargedon and Joseph J. Gottlieb, Boston, Mass., for plaintiff.

Hale & Dorr, David Burstein and George H. Foley, Boston, Mass., for Ellsworth Lewis and Tate Pipe Linings, Inc.

ALDRICH, District Judge.

This is an action of contract, based on diversity of citizenship. The plaintiff, owner of two patents, known as the Tate and Haskins patents, for the coating of pipe *in situ* with a lining of cement, en-

tered into a rather complicated agreement under seal with the defendants in October, 1938. I shall give effect to paragraph Twenty-third and rule that it was a Massachusetts agreement. The defendants for ten years were to pay a certain portion of their profits, and were also to pay royalties in an amount determined by linear and other measurements of all pipe treated. If within ten years the total payments equaled a certain sum, the defendants would own the patents. If not, they would continue to pay, but on a decreased basis, "during the life of the patents."

The specified sum was not reached during the ten years, and the agreement therefore continued. There was no specific termination clause. The second of the two afore-mentioned patents expired December 31, 1952. The plaintiff contends that the agreement was to continue until the expiration of a third patent, referred to in paragraph Nineteenth, which provided as follows:

"Nineteenth: It is understood that Tate shall make application for a patent in the United States and its possessions for the cleaning machine used in cleaning pipes preliminary to lining them with cementitious material, such application to be made within sixty days from date. If and when granted, Lewis or said corporation shall have the same license to manufacture, use and sublicense as he or it has in reference to the Tate and Haskins patents, without any additional charge or payment, and upon purchasing the Tate patent as hereinbefore provided, he or it shall be entitled to an assignment of such other cleaning machine patent. Said corporation shall pay for the patent application and registration fee for such cleaning machine patent."

This patent, known as the scraper patent, was obtained in June, 1941, and accordingly will not expire until June, 1958. The plaintiff asserts that the agreement is co-extensive.

Although a party may agree to pay royalties after the expiration of a particular patent, there is a presumption that he did not so intend, and the obligation must be clearly and specifically expressed. E. R. Squibb & Sons v. Chemical Foundation, Inc., 2 Cir., 93 F. 2d 475; Dwight & Lloyd Sintering Co. v. American Ore Reclamation Co., D.C. S.D.N.Y., 44 F.Supp. 396. I do not find any such expression in the instant agreement. On the contrary, the patents mentioned in the clause quoted in the first paragraph of this opinion from paragraph Tenth quite clearly seem to be only the Tate and Haskins patents.

The paragraph Nineteenth, or scraper patent, while the parties differ as to its importance, was necessarily of secondary consequence. Indeed, whether it eventually issued or not, the total annual compensation payable under the agreement was to be the same. To interpret the matter of the issuance of this patent as requiring the payment of royalties on the principal patents after they had entered the public domain would be letting the tail wag the dog.

If I understood the plaintiff's argument, he contended that a ruling terminating the payment of royalties under the agreement as of the expiration of the Tate and Haskins patents would leave him deprived of the benefit of the scraper patent, without payment, for the balance of its term.[1] However, if the agreement is regarded as terminated in December 1952, the defendants have no further interest in this patent, and all rights therein reverted to the plaintiff. I rule that this is the meaning and effect of the agreement.

The plaintiff conceded at the trial that such a ruling would leave him with only a claim for profits under Paragraph Eighth 1(B). Under this clause the de-

1. I am not certain that this was his position, but as there is no provision in the agreement for payment for the scraper patent except through royalties on the others, if that is not his position I see none that would be any better.

fendants were to pay for ten years, unless a certain sum were earlier realized, "Seventy-five per cent of the net profits of [defendant] corporation at the end of the close of each calendar year until an additional fifteen thousand dollars have been paid."

The defendants never made any payments under this clause; they never rendered any accounting to show whether or not any payments were due; and the plaintiff never asked for any such accounting. In view of Mass. G.L.(Ter. Ed.) c. 260, § 1, the statute of limitations has not run on a claim for the designated period—1938–1948. We are faced with an interesting question of construction. The evidence indicates, and I find, that in each of the calendar years 1939, 1941, 1943 and 1946 there was a loss, but in the calendar years 1940, 1942, 1944, 1945, 1947 and 1948 the defendant corporation showed a net profit.[2] It further appears, and I find, that the loss during the first year and later years was such that at the end of each calendar year during this period, save one, even though in some years there had been a net profit for the year, there was a net operating deficit if the net deficit from the prior year, or years, was carried over.

The plaintiff contends that under the agreement he was entitled to a payment during every calendar year, regarded as an entity, that there was a net profit, and that the defendants were not entitled to carry over any previously incurred operating deficit. This contention is contrary to Thurston v. Hamblin, 199 Mass. 151, 85 N.E. 82, and I reject it.

This does not cover the year 1945. The accumulated loss on January 1, 1945 was $3,332.66. During that year there was a profit of $5,081.76, leaving a net profit of $1,749.10. The defendants could not escape liability for this by showing that a loss of in excess of that amount occurred in 1946. Thurston v. Hamblin, supra.

However, the defendants have another string to their bow. The individual defendant was an officer and one of the employees of the corporate defendant. During the period 1938–1948 he received no compensation. There was a vote passed at one time that he receive $50 a day, plus 10% of the net earnings, for days actually worked, but it was understood that he was not to be paid until such time, if any, as the company was in a financial condition to meet this obligation. There was very little evidence from which I could find whether this rate of pay was reasonable. On the other hand, there was no contention that it was unreasonable, and considering the size of the corporation's operations, and what must have been the difficulties inherent in conducting its affairs, as well as the individual defendant's position in the business community, I find that the agreed daily rate was reasonable.[3]

If the individual defendant had been paid $50 for each day that I find he worked there would have been no net profit in any calendar year, entirely apart from any question of carrying over a net operating deficit.

There was some suggestion that statements of condition filed at the State House under Mass. G.L. c. 156, § 47 showed neither payment nor an accrued liability for the individual defendant's daily compensation. From this it is contended that the defendants are estopped from now asserting that there was not the profit shown on these annual reports. The plaintiff was a creditor solely by reason of the 1938 agreement, and became such prior to the due date of any of these reports. I rule that as to

---

2. This determination is without consideration of the defendant's claim that if the individual defendant had taken a salary to which he was entitled, there would have been no profit in any year. This question I shall treat later.

3. I make no finding as to the 10% of profits item. This leaves hanging $69 for 1947, which I regard as de minimis.

him the defendants are not prevented from showing that the true facts were other than as stated therein. Brackett v. Commonwealth, 223 Mass. 119, 111 N. E. 1036. I find that the corporate defendant had no net profit in any individual calendar year, even apart from any question of carry-over.

It follows that the plaintiff is not entitled to recover.