[No. 36357.   Department One.   June 6, 1963.]

THYS COMPANY, *Respondent*, v. WALTER C. BRULOTTE *et al.*,
*Appellants.*

THYS COMPANY, *Respondent*, v. RAYMOND CHARVET *et al.*,
*Appellants.**

* Reported in 382 P. (2d) 271.

Consolidated actions for royalties. Defendants appeal from separate judgments in favor of the plaintiff.

*Velikanje & Moore*, by *Charles C. Countryman*, for appellants.

*Cheney & Hutcheson*, by *Elwood Hutcheson*, for respondent.

ROSELLINI, J.—This is a suit for royalties claimed due under sale and licensing contracts covering certain portable hop-picking machine patents listed therein. The trial court awarded judgment to the plaintiff for accrued and unpaid royalties, finding that such royalties were due and owing and that none of the affirmative defenses alleged by the defendants had been established.

Mainly, the defenses urged by the defendants on appeal relate to the validity of the licensing contracts. It is contended that the contracts were illegal because (1) they placed restrictions on the subsequent free use of the patents after they were sold, (2) they conditioned the grant of a license on some patents on acceptance of a license on a larger group of patents, (3) they licensed the use of patents beyond the 17-year period of monopoly granted by the sovereign, and (4) they violated the antitrust laws of the United States. It is also contended that the contracts were terminated when the defendants first failed to pay royalties when they became due. For a last defense, the defendants alleged that they were not obligated to pay royalties for the years when the machines were not in use.

Before discussing these contentions, it will be well to describe the contracts under consideration in this action and the facts leading up to the litigation.

The plaintiff Thys Company, of which Mr. Edouard Thys, an inventor, was and is the president, holds numerous duly issued patents on mechanical hop-picking machines. The defendants are hop farmers who purchased portable hop-picking machines from sellers other than the plaintiff. In

connection with the purchase of these machines, which embodied devices patented by the plaintiff, each defendant agreed to pay the plaintiff royalties for the use of his machine for a period which was to end 17 years after the date the machine was first sold by the plaintiff. The royalties were to be paid at the rate of $3.33⅓ per two hundred pounds of hops harvested with the machines, and in any event a minimum royalty of $500 per year was to be paid for the use of each machine.

Under the terms of the licensing provisions of the contract, the defendants were entitled to use the machines and to make use of any of the patents which were owned by the plaintiff, as well as patents pending on hop-picking devices and methods, all of which were listed in the contracts, so long as they abided by the terms of the contracts. Not all of the patented items were used in the machines, and it was the purpose of the provision licensing use of all the patents to enable the purchasers to utilize the other patented items if they so desired without being obliged to pay additional royalties.

There was an agreement on the part of the defendants to keep records of the amount of hops harvested and to render annual accountings to the plaintiff. The defendants also agreed to keep the machines in good repair during the term of the licenses, and to keep them insured. The plaintiff agreed to furnish replacement parts when they were in stock. There was an agreement not to assign the contract or to allow the machines to become subject to any lien or encumbrance other than liens for current taxes, without the consent of the plaintiff. The plaintiff agreed that such consent should not be unreasonably withheld.

In each contract, there were provisions that failure to enforce a provision would not operate as a waiver of the right to require subsequent strict performance; that time was of the essence of the contract; that a discount would be allowed for prompt payment of royalties; that the defendants should pay reasonable attorneys' fees to plaintiff in the event legal action should become necessary to enforce the terms of the contract; and that the terms of the

contract comprised the entire agreement between the parties. The defendants also conceded the validity of any patent licensed in the contracts.

The defendant Brulotte purchased his machine in 1948; his obligation to pay royalties extended through the 1958 harvest. The defendants Charvet purchased their machine in 1951 and agreed to pay royalties until the completion of the 1960 harvest. The patents listed in the contracts expired at varying dates, some before the end of the period during which royalties were required and some after that period.

No royalties were paid by either party after the 1952 harvest season. Brulotte used his machine until 1958, but the Charvets did not use their machine after 1952. Apparently, these defendants purchased stationary machines when they stopped using the portable machines, finding them more satisfactory.

No error is assigned to the findings of fact. All of the errors assigned pertain to the interpretation and effect of the contracts. We will deal with these in the order in which they are listed at the beginning of this opinion.

(1) The first contention is that these royalty contracts embodied attempts on the part of the plaintiff to control the use of patented articles after they were sold. Numerous authorities are cited which hold that the sale of a patented article by one holding the patent, or a license to use the patent, puts the patented article beyond the reach of the monopoly conferred by the patent. But in this case, the patented articles were not sold by the patent holder or his licensee. Rather, bare title to the manufactured article was sold by the manufacturer at the time of the first sale, and the right to use the article was licensed to the purchaser by the patent holder. As the United States Supreme Court said in *United States v. Masonite Corp.*, 316 U. S. 265, 86 L. Ed. 1461, 62 S. Ct. 1070,

" . . . The test has been whether or not there has been such a disposition of the article that it may fairly be said that the patentee has received his reward for the use of the article."

■ Under the contracts involved in this action, the manufacturer was paid for the making of the machines, plus a reasonable profit, and conveyed the title; the patentee, on the other hand, agreed to take his remuneration in the form of royalties, payable over a period of years, which was to the advantage of the purchaser, who was enabled to pay for the use of the machine over a long period of time. There was no reward to the patent owner other than the royalties payable under the contracts. Under the rule laid down in the *Masonite* case, then, there was no such a disposition of the machines when these contracts were entered into, that it could fairly be said that the plaintiff, the patentee, had received his reward for the use of the machines. That reward would not be received until the final royalty payments were made.[1] Consequently, such control as he exercised over the use of the machines during the period when royalties were owed was within the monopoly granted him by the sovereign when the patents were issued.

(2) In regard to the contention that the contracts are illegal because they condition the grant of a license on some patents on acceptance of a license on a larger group of patents, the complete answer is that this is simply not the fact. The contracts do not require the defendants to take a license on all or none of the patents held by the plaintiff; they simply give them a license to use as many of the patented devices or methods as they choose, whether or not they were incorporated in the machines when they were purchased.

None of the authorities cited by the defendants holds a licensing contract of this type invalid. A contract with a similar provision was upheld in the leading case of *Automatic Radio Mfg. Co. v. Hazeltine*, 339 U. S. 827, 94 L. Ed. 1312, 70 S. Ct. 894. There a radio research organization entered into a licensing agreement with a manufacturer of

[1]This holding is in accord with the construction which this court gave to identical licensing contracts, for tax purposes, in the case of *Thys v. State*, 31 Wn. (2d) 739, 199 P. (2d) 68, cert. den. 337 U. S. 917, 93 L. Ed. 1727, 69 S. Ct. 1159.

radio broadcasting receivers, for royalties amounting to a small percentage of the manufacturer's selling price of complete radio broadcasting receivers, whereby it was given the right to use any or all of the patentee's 570 patents and any others which it might acquire. In that case, in an effort to avoid the obligation to pay royalties, the manufacturer made the same contention that is made here, that the contracts were invalid because they "conditioned" the licensing of the use of some patents on the acceptance of others. The court dismissed this contention summarily, remarking that there was no showing in the record that this was the case. The court approved the district court's characterization of the licensing agreement as "essentially a grant by Hazeltine to petitioner of a privilege to use any patent or future development of Hazeltine in consideration of the payment of royalties."

In this case, the trial court did not find, and the contracts in themselves do not reveal that there was any conditioning of the grant of a license to use the machines on an acceptance of a license to use other methods and devices not at that time embodied in the machines. We need not decide whether, if there had been such a condition, it would have rendered the contracts illegal.

(3) The next contention is that the contracts were unenforcible because they licensed the use of patents beyond the 17-year period of monopoly granted by the sovereign. *American Securit Co. v. Shatterproof Glass Corp.*, 268 F. (2d) 769, is cited in support of that proposition. In that case, the court found that a patentee had refused to grant licenses on patents which the manufacturer had desired to use unless the manufacturer would accept other licenses and held that this was a misuse of patents.[2] As a consequence, the patentee was denied recovery in its patent infringement suit. The court then went on to say that a provision that the licensing agreement should continue in

---

[2]The correctness of that decision is open to serious question; but we do not deem it necessary to discuss it here, inasmuch as the facts of that case differ substantially from those in this case.

full force and effect until the expiration of the last of the patentee's licenses constituted a misuse of patent. No authorities are cited in the opinion, and there is no discussion of the theory the court used in arriving at this conclusion. It is, in any event, dictum.

The defendants also cite *Prestole Corp. v. Tinnerman Products, Inc.*, 271 F. (2d) 146, and *Tinnerman Products, Inc. v. George K. Garrett Co.*, 185 F. Supp. 151. These cases do not involve the question of whether royalties can be collected after the expiration of a patent, but simply recognize the indubitable rule that the *monopoly* of a patent cannot be extended beyond the 17-year period.

The great weight of authority, as well as the stronger reasoning, is that parties to a licensing agreement may contract for the payment of royalties beyond the expiration of the patent, although, in the absence of such an agreement, a license contract expires when the licensed patent expires. Among the authorities so holding are *E. R. Squibb & Sons v. Chemical Foundation, Inc.*, 93 F. (2d) 475; *Starke v. Manufacturers Nat. Bank of Detroit*, 174 F. Supp. 882; *Tate v. Lewis*, 127 F. Supp. 105; *H-P-M Development Corp. v. Watson-Stillman Co.*, 71 F. Supp. 906; and *Six Star Lubricants Co. v. Morehouse*, 101 Colo. 491, 74 P. (2d) 1239. In the latter case, where an attempt was made to avoid the obligation to pay royalties because the contract called for their payment beyond the expiration date of the patent, the court said:

"There is no legal inhibition against a party contracting to pay royalty on a patented article or formula for a period beyond the date of the expiration of the patents. 48 C. J. 277, § 451; *Mitchell v. Hawley*, 16 Wall. (U. S.) 544, 21 L. Ed. 322; *Pressed Steel Car Co. v. Union P.R.R.Co.*, 270 Fed. 518.

" . . .

"Under these circumstances, we do not believe that we should declare, as a matter of law, that the contracts of October 26, 1925, terminated upon the expiration of the patents. . . .

" . . . When the parties entered into the contract they knew of the expiration dates of the patents, and if defendants saw fit to contract for royalty beyond such a time, it

may not now complain of an anticipated condition brought about by operation of law. . . ."

This is the rule which is set forth in Ellis, Patent Licenses (3d ed.) § 109, p. 128.[3]

In this case, when the parties signed their agreements, the instruments showed on their faces that some of the patents would expire before the end of the period during which the payment of royalties was required. It was undoubtedly understood between them that a 17-year period was a reasonable amount of time over which to spread the payments for the use of the patent. They agreed that the value of the right to use the patents embodied in the machines was at least $500 per year, for the remaining years of the royalty period. There is no legal or equitable reason why they should not be required to perform their agreement.

(4) The allegation that the contracts violate the antitrust laws of the United States is grounded on the contention that they constitute an abuse of patents, which, as we have already held, is without merit.

(5) In support of the contention that the contracts were terminated when the defendants ceased to pay royalties, they point to the language of the contracts granting the license:

". . . as long as the terms hereof be fully and faithfully performed and maintained, to use said machine(s), for the purpose for which said machine(s) was/were designed . . ."

---

[3]We are aware of a recent contrary decision in *Ar-Tik Systems, Inc. v. Dairy Queen, Inc.*, 302 F. (2d) 496 (C. A. 3d 1962). In that case the payment of royalties was required throughout the life of the machines sold. This was held to be a misuse of patents. We may assume that the agreement was enough like those involved in this case to make the rule applicable. We find the reasoning of the earlier cases more appealing, however, and we are not obliged to follow decisions of lower federal courts. *Lamb v. Railway Express Agency*, 51 Wn. (2d) 616, 320 P. (2d) 644. It is of interest that the writer of a review of this case in 31 Geo. Wash. L. Rev. 535, observed in a footnote that the agreement involved in the *Hazeltine* case (339 U. S. 827) might be justified by the Court of Appeals for the Third Circuit as a convenient method of payment.

and say that this language reveals an agreement that the obligation of both parties should cease in the event of default.

We cannot agree with this interpretation. In regard to this contention, the learned trial judge, in a very able memorandum decision, said:

"I find no substance in the argument of the defendants that the contracts were terminated by the default of the defendants, since it appears to me that under the language of the contracts contained in paragraph six thereof, it was the intent of the parties that the contracts could only be cancelled at the election of the plaintiff in the event of default or payment of royalties. A party should not be allowed to take advantage of his own default unless the language in the contract is clear and specific as to such right. This contract provides that the right to use the machines is conditioned upon full performance by the licensee. The contract is for a definite term and I am convinced from the reading of it that the parties intended that it run for that term. If defendants' contentions are meritorious then the contract would be cancellable at will of the defendants. As stated, I am sure that is not what was intended. I, therefore, hold that the contracts herein were not terminated by the defaults of the defendants."

In cases cited by the appellants, the courts found that the parties had evidenced by their words, agreements that the licenses should terminate on default of the licensees. Such cases are *Mason v. Electrol, Inc.*, 292 N. Y. 482, 55 N. E. (2d) 747, *Standard Appliance Co. v. Standard Equipment Co.*, 296 Fed. 456, and *Rose v. Imbrey*, 37 N. Y. S. (2d) 793. It should be noted that none of the cases involved a licensing agreement pertaining to a manufactured product sold to the licensee, but rather, all concerned the licensing of patents to manufacturers who might or might not manufacture articles embodying the patents, depending on a number of circumstances. If they failed to use the patents, the licensor would not be greatly harmed if the contract were terminated, for he could license other manufacturers. But here, if the contracts were to be construed as providing for automatic termination on default of the defendants, the plaintiff would lose his reward for his patents, while

the defendants would retain the patented machines. It cannot be supposed that such a result was intended.

Likewise, the contracts involved in the cited cases contained no absolute obligation to pay royalties. The contracts before this court do contain such obligations; according to their language, a minimum royalty is due each year for a definite number of years, regardless of whether hops are harvested. There is no ambiguity, and the trial court correctly so held.

(6) What we have just said disposes of the contention that royalties were not required for years when the machines were not used.

The trial court did not err when it held that none of the affirmative defenses had been established. The judgment is therefore affirmed.

OTT, C. J., HILL, HUNTER, and HALE, JJ., concur.

---

October 4, 1963. Petition for rehearing denied.