## CHADBOURNE V. DAVIS.

9  581
3a  270

1. Where evidence is very conflicting, contradictory and unsatisfactory, only the court in whose presence it is given can correctly estimate its value. An appellate court cannot.

2. Where two persons enter into a contract, the one to prospect for the discovery of mining claims, and the other to furnish the necessary money, provisions, etc., and do the discovery work on claims found, attend to the surveys, sink shafts, and file certificates of location, etc., such a contract, having been partly performed on both sides, cannot be regarded as rescinded, unless the circumstances show an absolute abandonment of the contract as to future enterprises. Proof of negotiations for an abandonment is insufficient to establish a rescission. The parties cannot treat the contract as binding and rescinded at the same time.

*Appeal from District Court of Chaffee County.*

THIS action grows out of an oral contract entered into by and between the plaintiff Chadbourne, and the defendant Davis, early in the month of June, 1881, by the terms of which Davis agreed to prospect for the discovery of mines during the summer season, and to locate his discoveries in the joint names of himself and Chadbourne; each to be the owner of an undivided half interest therein. In consideration of the services of Davis. in the above capacity, Chadbourne agreed to furnish all necessary provisions, cash and transportation necessary for prospecting. The plaintiff alleges full compliance with the terms of his contract; but alleges that while defendant was prospecting, using plaintiff's provisions, tools, etc., to wit, about August 6, 1881, he discovered the Madaline lode, in Gunnison county, which he caused to be staked and recorded in the names of defendant and one Linehan, three-fourths thereof in the name of defendant, and one-fourth in the name of Linehan, and refuses to recognize the one-half interest therein justly owned by the plaintiff. The defendant admits the contract substantially as stated, except that he alleges that plaintiff further agreed to do the discovery work on claims discovered, sink shafts, have them surveyed, and certificates of location filed as required by law. He further alleges that he had discovered, up to August 1st, about nineteen claims, but plaintiff failed to comply with his agreement to improve, survey and record them, and permitted them to lapse. Defendant also alleges that the contract was rescinded about August 1, 1881, and the defendant discharged; that he subsequently, on the 6th day of August, 1881, discovered the Madaline, and that plaintiff was not and is not interested therein. The plaintiff replies, denying the rescinding of the contract, and alleging performance of his agreement, including assistance to complete the discovery work on the Mada-

line. The trial was to the court without a jury, and the finding and judgment were for the defendant Davis.

Messrs. HARTENSTEIN and SINDLINGER, for appellant.

Messrs. RHETT and HOBSON and ROGERS and CUTHBERT, for appellee.

BECK, C. J. The evidence throughout the case is very conflicting, contradictory and unsatisfactory. A court can only correctly estimate such testimony when given in its presence. We are of opinion that the evidence is sufficient to sustain the rescission of the contract as to further prospecting for mines after August 1, 1881. Several witnesses testify to it, and the testimony of the plaintiff is not in plain contradiction. He admits saying more claims had been discovered up to that date than could be worked; also that he told Davis he could not afford to work on every mineral streak he might discover, and other admissions of like import. The defendant, five or six days afterwards, discovered the Madaline; and it is claimed their joint conduct concerning the discovery work, and their joint efforts to sell the claim, have an important bearing on the question whether it was discovered while the prospecting contract was still recognized by the parties as in force, or afterwards.

The rule concerning the rescinding of such an agreement is that, unless the circumstances show an absolute abandonment of the contract as to future enterprises, proof of negotiations for an abandonment is insufficient to establish a rescission of the agreement. The parties cannot treat the contract as binding and rescinded at the same time. But, when the entire testimony is considered, we are disposed to believe the finding of the court was correct, and that the contract was in fact rescinded. After the supposed rescission, which occurred at the village of Vicksburg, Chadbourne and Davis set out for Texas creek, where the Mountain View and Madaline

claims are situated. As they were ascending the hill, Chadbourne says they sat down, and he asked Davis what he was going to do. He says Davis had procured stuff (probably meaning provisions) from Daniel Mero, and, not knowing what he was going to do, he wanted to have an understanding. He admits that he knew, before starting out with Davis, that he had procured his supplies from Mero, and says the object of his inquiry was to find out what Davis was going to do. This would indicate that they had not set out with an understanding to continue operations under their prospecting contract.

Chadbourne went to the mines to perform labor on the Mountain View, and he claims that Davis was assisting him in this work when he discovered the Madaline. This fact, if true, would not establish Chadbourne's interest in the Madaline. The Mountain View had been discovered while the contract was in force, and it would be consistent for the parties subsequently to perform necessary labor thereon to perfect the location. But the Madaline, discovered August 6th, would not come within the terms of an agreement already rescinded, and there is no evidence of any other agreement. The action of Davis, in staking the claim in his own name alone at the time of its discovery, tends to show his understanding that the contract had been dissolved. Chadbourne did not even go to see the new claim until his next return to the camp, about the 17th of August, when, according to his testimony, he brought a man with him to buy this claim. He testifies that he assisted in performing the location work thereon; but his own testimony on this point is, to say the least, unsatisfactory, as it shows he remained in the camp a very short time during that visit. His strongest proof of a recognized interest in the claim is the testimony of Van Winkle, a witness introduced by him in rebuttal. This was the person whom Chadbourne claims to have taken over to buy this valuable mine. It seems to us, however, that the testimony of this witness

is not in keeping with his assumed character as a purchaser of mines. Being sworn, and asked what his business was, he answered: "I prospect a little once in a while." Being asked what he went to Texas creek for on the 16th or 17th of August, 1881, he answered that Chadbourne wanted him to go over and "take some interests and sink some assessments. * * * He showed me different claims after I got there and some ore, and wanted to know what I would give for some claims. One in particular was the Madaline, as he called it." Witness further states that, after some negotiation, Chadbourne and Davis each agreed to take $1,500 for their respective interests therein; that they were then performing the location work on the claim. The stakes were set, and contained the name "Madaline;" but he remembers nothing more of the inscription. This witness admits that he could not purchase a $3,000 claim, but winds up by saying that the parties offered him $50 each to find a purchaser. This evidence, when considered by itself, and also in connection with that given by B. F. Whitescarver and wife, who both swore positively that Chadbourne tried to hire the husband to testify for him in this case, is so unsatisfactory that we decline to disturb the finding of the district court, before whom the witnesses personally appeared.

The judgment will be affirmed.

*Affirmed.*