No. 12,142.

Morath v. Perkins, et al.

Decided May 27, 1929.

Messrs. CUNNINGHAM & FOARD, Mr. J. E. LITTLE, for plaintiff in error.

Mr. SAMUEL H. KINSLEY, Mr. JOHN A. CARRUTHERS, for defendants in error.

*In Department.*

MR. JUSTICE MOORE delivered the opinion of the court.

MORATH, a real estate salesman, sued Perkins and wife to recover judgment of $38,000 damages arising out of the failure of defendants to carry out the provisions of an alleged contract for the sale of defendants' real estate to plaintiff. Upon a trial to a jury, the court directed a verdict for the defendants for reasons, among others, that the alleged contract in question was an offer to sell and that it had not been accepted by the plaintiff. Plaintiff now seeks to review this ruling, contending that the alleged contract is bilateral and that if unilateral, there was sufficient evidence of acceptance thereof to take the case to the jury.

The evidence discloses the instrument sued upon hereinafter set forth, also the following escrow agreement:
                                          "May 14th, 1925.
                    "Escrow Agreement
"To the Exchange National Bank,
    "Colorado Springs, Colorado,
    "Gentlemen,
    "You are hereby instructed to deliver the enclosed

warranty deed to Frederic P. Morath upon payment by him to you of the sum of $8000.00, a check for $600 of which amount he to deposit with you at this time, and upon delivery to me of a mortgage deed and notes in the amount of $4000.00, one note for $2000.00 payable on or before one year after date, and one note for $2000.00 payable on or before two years after date, both notes bearing interest at the rate of eight per cent per annum, payable semi-annually, said mortgage secured by property in the enclosed deed.

"I am to furnish an abstract of title to said property, certified to date, and this transaction is placed in escrow with you pending delivery by me of good and sufficient abstract of title, and when abstract shall be delivered by me and approved by buyer then money and mortgage deed and notes shall be turned over to me and warranty deed to said Frederic P. Morath.

"W. Arthur Perkins."

This was prepared by the plaintiff and delivered to the Exchange National Bank of Colorado Springs together with the check for $600 and the warranty deed mentioned therein. Thereafter an abstract of title covering the property in question was delivered to the plaintiff. An examination thereof developed the fact that the defendants were not then able to deliver a marketable title. Efforts were made to perfect the title which proved ineffectual. Plaintiff was ready, able and willing to buy the property. A contract of sale and purchase was executed on July 15, 1925, between the Morath Investment Company of Miami, Florida and J. B. Gross whereby the property in question was purchased for $50,000, conditioned upon the delivery of a marketable title. The purchaser Gross was ready, able and willing to carry out the terms of said contract and would have carried them out had a marketable title been delivered to him. The reasonable market value of said property in July, 1925, was $50,000.

The foregoing is a brief summary of the evidence pertinent to a decision of the questions here presented.

A determination of this case involves two questions: (1) Is the alleged agreement a contract of purchase and sale or an offer to sell? (2) If an offer or option, was it accepted?

1. The contract sued upon follows:

"Agreement of Sale and Purchase

"This agreement made and entered into this 14th day of May, A. D. 1925, by and between W. Arthur Perkins and Emily V. Perkins, his wife, parties of the first part, and Frederic P. Morath or his assigns, party of the second part,

"Witnesseth, that whereas the parties of the first part are the owners of a certain tract of land situated in the county of Palm Beach, state of Florida, more particularly described as follows, to wit:"

(description omitted.)

"Whereas the parties of the first part have agreed to sell and deliver to the party of the second part or his assigns the land heretofore described as belonging to them,

"Now, therefore, in consideration of the sum of one dollar in hand paid to the parties of the first part by the party of the second part, the receipt whereof is hereby acknowledged and confessed, and in consideration of the further payments to be made or covenants to be performed, the parties of the first part bind themselves to sell, transfer and deliver to the party of the second part or his assigns, the land heretofore described as belonging to them, this to be done upon the following terms, basis or conditions, to wit:

"The entire purchase price is to be $12,000.00 net, and the balance is to be paid in the following manner: $8,000.00 in cash upon delivery of warranty deed and abstract of title to said land, and for the balance of $4,000.00 said parties of the first part are to take back a

first mortgage for that amount on the land conveyed, payable as follows: One note for $2,000.00 payable on or before one year after date, and one note for $2,000.00 payable on or before two years after the date, both notes to bear interest at the rate of eight per cent per annum, payable semi-annually.

"The parties of the first part shall furnish the buyer with a full and complete abstract of title, certified to date, the same to disclose a good and marketable fee title vested in them, absolutely free and clear of any and all encumbrances, liens or taxes of any kind or nature whatsoever. Notes and mortgage shall be dated as of date of final consummation of this transaction or final delivery of abstract of title plus fifteen days additional for examination of such title by the party of the second part, which day shall constitute day of final consummation.

"To all of which we bind ourselves, our heirs, administrators or assigns.

"W. Arthur Perkins    (Seal)
"Emily V. Perkins    (Seal)
"Frederic P. Morath    (Seal)

"Witness:

   "C. G. Graham
   "J. D. Ackerman"

The plaintiff strenuously contends that this instrument is bilateral, containing mutually binding promises; that its character as such is demonstrated by its heading "Agreement of Sale and Purchase," and by the fact that the parties thereto intended to so consider it by signing their names thereto, and by their acts and statements in connection therewith as shown by the evidence. Notwithstanding the able argument of counsel in support thereof, we are of opinion that the contract in question is a mere offer to sell, and not a contract containing mutual covenants of sale and purchase.

It is elementary that a naked intention to

106

become obligated is insufficient to constitute a binding promise. Affirmative action on the part of the promisor must accompany such intention. The contract itself must contain words which, when properly construed, constitute an obligation. An instrument is to be most strictly construed against the party who prepared it. With these principles in mind, let us examine the writing. The title, "Agreement of Sale and Purchase," is no part of the contract itself. It may be considered as evidence of a belief by Morath that he was drawing a contract of purchase and sale. To hold that such a title is equivalent to mutual covenants in the body of the contract, and that therefore the contract is bilateral, would be absurd. Nothing therein contained in the slightest degree evidences any obligation on the part of Morath to purchase the property.

It is claimed that because Morath signed this instrument, and bound himself to the terms thereof, that this is equivalent to an obligation to purchase. We cannot agree with this because there is not a word in the contract from which it can be reasonably determined, or at all, that the plaintiff intended to or did obligate himself to purchase the property. The contract is so drawn (whether intentionally or otherwise is immaterial) that there are no words therein contained from which it can be construed that the plaintiff was obligated to do anything thereunder. It is not necessary to strictly construe this instrument against Morath, the one who drew it, but construed most favorably for him, it amounts to nothing more than an offer upon the part of the defendants to sell. Such holding is controlled largely by: *Stelson v. Haigler,* 63 Colo. 200, 165 Pac. 265; *Neal v. North Fork Co.,* 73 Colo. 79, 213 Pac. 334. In the former, the contract in question contained these words: "The party of the first part sells and agrees to convey to the party of the second part by warranty deed and abstract brought down to date of transfer, the same to

show marketable title, the following described lands and water rights:"

In construing this instrument, the court said on page 207: "Neither Kloke nor Stelson claim any rights under the agreement as between themselves. But under all settled rules of construction, the agreement between Stelson and Kloke was an option to purchase, and not a contract of sale. Nowhere in the agreement does Kloke agree to purchase, nor to make any payment, or to bind himself in any other respect, aside from the forfeiture of the amount paid at the time the contract was made. Both Stelson and Kloke treated and construed the agreement as an option at the time, and at all times since."

The general rule of construction is laid down as follows: "It may be laid down as an established rule of law that unless the contract contains language which may reasonably be construed as an agreement on the part of the vendee to purchase the property, or to assume some obligation thereunder, it will be an option contract and not an agreement of sale and purchase. It is impossible to conceive of an agreement of sale and purchase without obligation on the part of the vendee to purchase. On the other hand, the absence of such obligation is the distinctive characteristic of an option contract. A contract of sale creates mutual obligations on the part of the seller to sell, and on the part of the purchaser to buy, while an option gives the right to purchase, within a limited time, without imposing any obligations to purchase. James on Option Contracts, §105, and authorities cited. *Hessell v. Neal*, 25 Colo. App. 300, 137 Pac. 72."

In the latter case (73 Colo. 79) the contract under construction provided: "This memorandum of agreement made and entered into this 26th day of Jan., 1921, between The North Fork Land and Cattle Company by C. H. Allyn, Pres. and Elvis H. Woodhouse, whereby The North Fork Land and Cattle Company is selling the fol-

lowing described real estate to Elvis H. Woodhouse,'' and was signed by both parties. It was there contended that the instrument was a contract of purchase and sale. The court held: ''This contention is not tenable. The agreement was not a mutually binding and enforceable contract, it was a mere option contract and contained no covenants binding Woodhouse to buy. By the terms of the contract Woodhouse acquired the right, at his election, to purchase or not to purchase the ranch on the terms and within the time specified in the contract, without assuming any obligation whatever by which a sale could be enforced against him by the seller. This is not a contract of sale such as the law requires, as evidence of the fact, that the broker has fulfilled his obligation in introducing a customer to the owner who is ready, able and willing to buy on the terms satisfactory to the vendor.''

The court then quotes the rule of construction as set forth in the Stelson case, supra. We are convinced that these cases are decisive of the question in the instant case, and that the contract here involved constitutes merely an offer to sell.

█ █ 2. The instrument being a mere offer to sell, it could not develop into a mutually binding contract unless its terms were accepted. Plaintiff contends that the evidence discloses acceptance; that the delivery of plaintiff's check to the Exchange National Bank pursuant to the terms of the escrow instrument operated as an acceptance and that plaintiff's actions demonstrated an intention to accept the offer to sell. The escrow agreement, supra, was prepared by the plaintiff and signed by the defendant Perkins. This instrument not having been mentioned in the agreement or offer to sell, and not having been made a part thereof by reference thereto, is independent thereof. Under said escrow writing, the plaintiff did not obligate himself to do anything. The deposit of the check pursuant thereto created no obligation. He could have demanded a return

of the same at any time before accepting the offer to sell. Accordingly the contention of the plaintiff that the deposit of his check operated as an acceptance of the agreement to sell is fallacious and without merit.

The testimony discloses an effort on the part of plaintiff to perfect, or have perfected, the title of the real estate in question, and, at most, amounts to a demand by the plaintiff that the defendants deliver a marketable title. It is elementary that a demand to perform does not operate as an acceptance of an offer to sell. It creates no binding obligation to purchase. The record fails to disclose any evidence from which it can be determined that the plaintiff accepted said offer to sell, or any evidence tantamount to an acceptance. If he had an intention to become obligated and to accept said offer of sale, such intention was not manifested to the defendant by any sufficient affirmative action or statement on his part. No payment or tender of payment of the purchase price according to the provision of said offer to sell, or at all, was made by the plaintiff. To be ready, able and willing to carry out the terms of said offer to sell is not sufficient to constitute an acceptance thereof, and this is true even though the offer to sell could not have been consummated because of defective title. One may be ready, able and willing to buy and not be obligated to buy.

It having been demonstrated to our satisfaction that the instrument in question was a mere offer to sell, and was not accepted by plaintiff, it becomes unnecessary for us to consider any of the other reasons advanced by the defendant in their motion for a directed verdict.

The lower court was right in directing judgment for defendant and the judgment must be affirmed.

Affirmed.

MR. JUSTICE ADAMS, sitting for MR. CHIEF JUSTICE WHITFORD, MR. JUSTICE BUTLER and MR. JUSTICE BURKE concur.