### WEAVER BROS. v. JAGGERS et al.
### No. 3677.

Court of Civil Appeals of Texas. Amarillo.
Nov. 4, 1931.

Rehearing Denied Dec. 2, 1931.

Robt. A. Sowder, of Lubbock, for appellants.

Douglas & Spiller, of Lubbock, for appellees.

RANDOLPH, J.

Weaver Bros., as plaintiffs, brought this suit in the district court of Lubbock county against Bill Jaggers, A. C. Hendricks, and the J. C. Crouch Grain Company, as defendants. Judgment for defendants, and plaintiffs appeal.

It is alleged in plaintiffs' petition that the plaintiffs were seed merchants; that Jaggers

was a farmer in Cochran county and a grower of such character of seeds as plaintiffs dealt in; that on March 14, 1930, Jaggers contracted to plant and grow in Cochran county 350 acres of sudan grass seed at $2.25 cwt. to be paid for at Lubbock and to cover all the seed raised on the land, and also alleged a number of advances made to Jaggers; that on the 21st of April, 1930, they further contracted with Jaggers for 150 acres additional of sudan grass seed at $2.25 cwt. under the same terms as contained in the first contract, and that the 350 acres and 150 acres were to be grown on the George Wolffarth lands in Cochran county, and were to cover all the acreage he planted on the Wolffarth land; that said Jaggers did grow about 500 acres of sudan grass seed on such lands, and by reason thereof plaintiffs were the owners, and were ready, able, and willing to pay the price therefor, less cost advances; that said lands grew about 70,000 pounds of sudan grass seed, which were loaded on cars and carried to Lubbock and delivered to the J. C. Crouch Grain Company; that Hendricks and Jaggers conspired together to defraud plaintiffs of their seed, it having increased in price to about $6 cwt. at pay-off time, and the said Hendricks converted said seed to his own use, and also concealed about 14,000 pounds of such seed after having shipped 53,310 pounds to the said Grain Company, and the said Hendricks converted said seed to his own use. In the alternative, plaintiffs pleaded that, if there was no conspiracy between Jaggers and Hendricks, Hendricks, being a creditor of Jaggers, seized all of said seed under some claim of lien, and proceeded to thresh it and appropriated the output, and, if Hendricks had any lien, it was inferior to plaintiffs' lien; that Hendricks refused to deliver the seed after demand, and plaintiffs alleged as damages the difference between the contract price and the market value of 6 cents per pound, and asked credit for advances.

Defendant Jaggers filed no answer, and neither did the J. C. Crouch Company.

Defendant Hendricks pleaded that he himself leased the land from Wolffarth and placed Jaggers thereon to grow and make the crop, and advanced him $2,000, and that thereafter Jaggers was to execute him a mortgage to secure the $2,000, which mortgage was executed about July 18, 1930, and that at such time Jaggers was indebted to Hendricks in a sum more than $7,000, and to liquidate same Jaggers turned over the crops on the Wolffarth place, and said defendant claimed said crops as an innocent lienholder or purchaser by reason of having no notice of sale by Jaggers to the plaintiffs.

A jury was impaneled and sworn, and, after hearing the evidence, the court submitted to them the following special issues, which the jury answered as indicated after each issue:

"Plaintiffs Special Issue No. One. How many pounds of sudan seed were raised on the place known as 'Alamo' in Cochran County in the year 1930?" To which the jury answered: "69,905."

"Plaintiffs Special Issue No. Two. Was said crop of sudan grass seed of the same general average in pounds per acre?" Which the jury answered: "Yes."

"Plaintiffs Special Issue No. Three. What was the market price at Lubbock, Texas, f. o. b. cars Lehman or Pearley Switch, of such seed on or about Nov. 10, 1930? The jury answered this: "5¢."

"Plaintiffs Special Issue No. Four. What amounts, if any, were advanced by plaintiffs to Jaggers on the sudan contract with him?" Answered: "617.39."

"Plaintiffs Special Issue No. Five. How many pounds of sudan grass seed that were raised on the place known as 'Alamo' in Cochran County in the year 1930, were taken by defendant Hendricks?" Answered: "53,-450."

And, the defendant Hendricks having filed his motion for the court to instruct the jury that the plaintiffs take nothing as against him, the court thereupon instructed said jury to find in favor of the defendant Hendricks and against the plaintiffs, Weaver Bros.; the jury, in addition to their answers to the special issues given at the request of the plaintiffs, at the same time found a verdict in favor of defendant Hendricks against the plaintiffs, Weaver Bros. Upon this verdict the trial court rendered judgment that the plaintiffs take nothing against defendant A. C. Hendricks and the J. C. Crouch Grain Company, but the court found judgment in favor of the plaintiffs against Jaggers in the sum of $1,-381.57, and also found the further sum of $617.39, with interest on both sums.

The first contract between the plaintiffs and Jaggers was dated March 14, 1930. In that contract it was provided as follows:

"Contract No. 417. Lubbock, Texas, March 14, 1930.

"This contract entered into by and between Weaver Bros. of Lubbock, Lubbock County, Texas, and Bill Jaggers, of Lehman, Cochran County, Tex.

"Said Jaggers hereby agrees and binds himself to plant and cultivate for Weaver Bros. 300 acres of Red Top cane seed and 350 acres of Sudan seed and cultivate for them and deliver to them all the seed raised from said acreage, on the following terms: All seed to be delivered as soon as threshed, Red Top cane to be kept absolutely free from any mixture of other grain or noxious seed, dirt or Johnson grass, said grain to be rogued of all off brand heads of other seed before cutting, and seed to be well matured seed free of mold or dampness, and to be scooped into

car 'and not through an elevator, all truck wagons or freight car and threshing machine to be swept clean before loading or threshing, and delivered on car free from any mixture, and Lubbock railroad weights to be final and seed to be paid for after cleanout test has been made at Lubbock. Weaver Bros. agree to pay $1.25 per hundred for the seed not to lose more than five per cent cleanout, Weaver to furnish the red top seed and charge Jaggers cost price, deduct from final settlément.

"The sudan seed are bought and agreed to by both parties at $2.25 per hundred basis clean seed, in other words Weaver Bros. are to pay for the amount of clean seed based on the official test at Lubbock, and are to be paid for after seed reach Lubbock and cleanout has been ascertained, seed are to be absolutely free from Johnson grass and other noxious seeds, and loaded on cars free of charge to Weaver Bros. and railroad weights at Lubbock to be final. Said Jaggers agrees to deliver to Weaver Bros. all the seed raised on said lands, and all seed are to be well matured, merchantable seed, bright and suitable for seed, and the price is f. o. b. cars Lehman, Texas, paid on this contract $5.00, receipt of which is hereby acknowledged, same to be deducted from final settlement.

"Weaver Bros. agree to furnish 50 cents per acre on said seed, in August or Sept., provided seed show as per contract and are matured ready to cut.

> "[Signed]    Weaver Bros.
> "Bill  Jaggers."

The second contract, dated April 21, 1930, provided as follows:

"Contract No. 416.

"Weaver Brothers
"A. V. Weaver          S. H. Weaver
   "Wholesale Dealers  300 acres Sudan & Red
   "Field      Seeds.   Top 150 acres each.
            "Lubbock, Texas, April 21, 1930.

"This contract entered into by and between Weaver Brothers of Lubbock and Bill Jaggers of Lehman, Cochran County, Texas.

"Said Jaggers hereby agrees to plant and cultivate on new land first year in cultivation 150 acres each of Red Top cane seed and Sudan seed, total of this contract 300 acres sudan and red top.

"This contract in addition to one made on March 14, 1930, and it is understood and agreed by both parties hereto that the same terms shall apply on this contract as the one March 14th, 1930, seed are to be delivered to us free from mixture and good merchantable seed and all the terms of other contract carried out in this one, railroad weights at Lubbock to be accepted as final and sudan is to be paid for on basis clean seed and red top basis not to lose more than 5% at a price of $1.25 per hundred f. o. b. cars for Red Top and $2.25 per hundred for sudan, test for cleanout at Lubbock and to be paid for after

cleanout test has been made and railroad has weighed same, Weaver to furnish seed at cost to us and same to be deducted from final settlement, said seed furnished to be the money paid consideration on this contract.

> "[Signed]    Weaver Bros.
> "Bill Jaggers."

It will be observed that the first contract provides for 350 acres of sudan grass seed to be planted and harvested and the second 150 acres of sudan grass seed to be planted and harvested, but does not describe any lands upon which these crops are to be planted and cultivated. Further, the contracts provide for a delivery of the seed after cleansing and based on an official test at Lubbock, and there the seed to be ascertained to be absolutely free from Johnson grass and other noxious seeds, loaded on cars free of charge to Weaver Bros., and that the railroad weights at Lubbock were to be final.

The question for our decision is: Was this a sale by which title passed to Weaver Bros., from Jaggers of the sudan grass seed grown on the Wolffarth land known as the "Alamo" place.

A. V. Weaver, one of the plaintiffs, testified that, at the time the first contract was signed, the one dated March 14, 1930, providing for the planting of 350 acres in sudan grass, he did not know what particular land this crop was to be planted on. As to the second contract, the witness testified: "When I made the contract of April 21st, I knew which land that was to be grown on. I don't remember whether Bill (Jaggers) told me the exact ground that it was to be grown on or not. He told me that he was getting it from Mr. Wolffarth. * * * This land was also known as the 'Alamo' place."

The defendant Jaggers testified that the first contract providing for 350 acres was to be grown upon the "Home Place," which he identified as belonging to Hendricks and the crop from which is not in controversy.

The rental contract from Wolffarth to Jaggers was dated April 4, 1930.

■ The contracts of sale from Jaggers to the plaintiffs failing to describe the land upon which the crops were to be raised, and containing no reference within itself whereby the land could be identified and the particular land upon which the crop was to be grown not having at that time been determined, as the plaintiffs testified, we are of the opinion that no title passed from Jaggers to the plaintiffs to the crop in controversy.

It appears from the record that "all" the sudan grass seed to be raised by Jaggers upon the 150 acres of land and the 350 acres was intended to be conveyed, but it also appears, not only that the specific 350 and 150 acres had no location or identity at that

time, and it appearing also that the two tracts were to be taken out of a larger acreage, unidentified, renders the sale of no force and effect.

In the case of Cleveland v. Williams, 29 Tex. 204, 94 Am. Dec. 274, T. B. Hall sold to Cleveland 100 bushels of corn to be taken out of a large bulk of corn then in Hall's crib, and that C. B. Hall would measure it. A few weeks after this T. B. Hall died. After the death of T. B. Hall, C. B. Hall measured and delivered the corn to Cleveland, measuring it from a large bulk of corn then in T. B. Hall's crib. On appeal to the Supreme Court, error was assigned to the trial court's charge, in which the charge to the jury is as follows: "If you find from the evidence that the corn in question, that is, the one hundred bushels, was in a bulk with other corn, and had not been measured out and separated from the bulk, so that the same could be identified previous to the death of Hall, then the sale was incomplete, and you will find for the plaintiff the value of the corn as proved."

In passing upon this charge, the Supreme Court, Judge Coke speaking for the court, says: "Considering this instruction with reference to the facts of this case, it involves two propositions: first, that in order to complete the sale of the corn, and pass the title to Cleveland, it was necessary that it should have been separated from other corn and measured, so as to be identified, and capable of specific delivery to and possession by the vendee; and, second, that if not so completed in the lifetime of Hall, the act of his agent, C. B. Hall, in separating, measuring, and delivering the corn after the death of his principal, was unauthorized and void, and conferred no right upon Cleveland to the corn delivered. We are of opinion that the charge on both propositions is correct. * * * But it is essential that nothing shall remain to be done (by the vendor) to the thing sold to put it into a condition for sale, or to identify it, or to discriminate it from other things. If anything remains to be done by the vendor which is material or important before the vendee can identify or possess the thing sold, or before it becomes deliverable, the sale is executory and incomplete, and the property in it does not pass absolutely to the vendee."

This was the rule clearly laid down by the Supreme Court, and is recognized and followed in the case of Allen & Bros. v. Melton, 64 Tex. 218, but we realize that the recent decisions have modified it in many particulars not necessary here to discuss. However, we do not think that it was ever intended that a seller could broadcast a sale and make it apply to property that was not located or definitely determined by the seller and the purchaser at the time of the trade. The fact that the contemplated crop had no location

does not permit us to hold that title passed by a contract of sale of a crop to be grown upon any land which he may later lease, and therefore we hold that the title to such a crop does not pass.

A crop may be sold or mortgaged which is not yet in existence, but: "Of course, the land upon which, and the year in which, the crop to be planted and cultivated in the future, is to be grown, must be agreed upon." 13 Tex. Jur. 9, § 8.

The same rule is applied to descriptions in sales as in mortgages, in that such sales shall sufficiently describe the land upon which the crop is to be grown, and the tenant cannot pass title to such crops, unless he has a present interest in the land upon which the crops are to be planted. L. R. A. 1917C, 15 and 16 (e) and authorities thereunder.

We say this without reference to the claim of innocent purchaser made by defendant Hendricks, for in such sales no notice is required as against such purchaser.

We therefore affirm the judgment of the trial court upon our holding that the title to the crop did not pass from Jaggers to the plaintiffs.