No. 15,751.

HARTWELL *v.* MINNEAPOLIS-MOLINE POWER IMPLEMENT COMPANY ET AL.

(186 P. [2d] 228)

Decided November 3, 1947.

Messrs. GELT & GROSSMAN, Mr. A. B. CROSSWHITE, Messrs. CHUTKOW & ATLER, for plaintiff in error.

Mr. ARCHIBALD A. LEE, Mr. BENJAMIN GRIFFITH, Mr. CHARLES H. BEELER, for defendants in error.

MR. JUSTICE HAYS delivered the opinion of the court.

H. F. HARTWELL, plaintiff below, brought suit in the district court in Lincoln county, against Minneapolis-Moline Power Implement Company, a corporation, and M. Meyers, to recover damages alleged to have been sustained by him growing out of his order for two Model G-4 harvesters, and the alleged failure or refusal of defendants to deliver same. The trial court directed a verdict in favor of defendants, and entered judgment accordingly. The plaintiff is here by writ of error seeking reversal of the judgment.

The pertinent facts are: On January 3rd, 1942, Hartwell signed an order for the purchase of two harvesters from the Company through its branch store, to be shipped "via Co. truck" to the plaintiff at Arriba, Colorado, "when available 1942 (or as soon thereafter as the company can do so)." It is also recited in the purchase order, "cash with order $200.00," and the balance of $3,003.90 to be paid "cash on or before delivery." On June 2nd, 1942, the company wrote Hartwell: "We can ship one machine for you this month, but the second machine will not be available until in August. This may be too late for the second machine and, if so, we ask that you please advise us to that effect in order that we may reallot it to another territory where the harvest will be later." On June 3rd, 1942, the plaintiff replied:

"August is out of the question for a combine. Wheat is advancing rapidly due to the dry weather and I could well be in harvest in two weeks or possibly three. I was foresighted enough to realize that parts and combines would be hard to get this fall and had full assurance from the Denver Branch that I would get two machines, if that number was shipped to the Denver house. If Denver Branch is shipped only one machine this fall, I'll be satisfied. If more than one is shipped or sold through this Branch, I'll expect both my combines. That is the way they were bought and that is the way I expect the Co. to deliver."

Thereafter about June 20th, 1942, plaintiff purchased one of the company's harvesters through the Frühling Motor Company at Flagler, Colorado, and took delivery at that place. At the time of that purchase he was required by the Company to, and did, sign a new or resale order; whereupon plaintiff demanded the two hundred dollars deposit made on the purchase of the two harvesters June 2nd, 1942, above mentioned, be returned to him and applied on the purchase price of said harvester then and there delivered. Plaintiff not only demanded the return of his deposit of two hundred dollars, but refused upon request to sign an order for a second harvester or leave one hundred dollars on deposit therefor or otherwise indicate in writing that he was obligated for the purchase of a second harvester, stating as a reason for such refusal that he "didn't know whether he would need it [harvester] or not, that it depended upon the crop."

Counsel for Hartwell state in their brief that the issue is herein narrowed down to: "1. Whether or not the order placed by the plaintiff with the Denver branch of the defendant Company was accepted, irrespective of the language contained in Exhibit J; if there was such an acceptance, whether by conduct, unreasonable delay, correspondence, acceptance and retention of the initial payment, partial performance, then a contract existed

between the plaintiff and the defendant Company, and if such existed the defendant Company was responsible to the plaintiff for the breach of that contract, not only for the customary damages but the unusual damages which result therefrom and which were brought to the attention of the defendant Company. 2. Whether or not the defendant Company was responsible for the acts of its agents, the co-defendant, Meyers, in diverting the said machine contrary to the instructions given to the said defendant, Meyers, in view of the fact that the said defendant Company approved and ratified said acts by accepting payment from the defendant, Meyers, at a time when the defendant Company knew the machine had been diverted. 3. Whether or not the defendant, Meyers, was responsible for his intentional acts in interfering with the relationship that existed between the plaintiff and the defendant Company and knowingly diverting the machine from its destination to his own use and profit."

Assuming, but not deciding, that the purchase order of June 2, 1942, constituted a valid offer to purchase two harvesters from the defendant company, and that said offer was duly and properly accepted in one or all of the various ways mentioned by the plaintiff in error, it is clear that the latter cannot prevail herein, and that the trial court did not err in granting the motion for a directed verdict against him.

██ Hartwell, by his conduct abandoned, and revoked, the order for two harvesters and thereby terminated and rescinded the alleged contract by the withdrawal of his deposit June 20, 1942, and his refusal to be further obligated for the purchase of a second harvester. In his dealing with the Fruhling Motor Company, the agent of the defendant company, he made it plain that the purchase of the second harvester depended upon the condition of the crop to be harvested. Under the circumstances the alleged contract, assuming its binding force prior to June 20th, 1942, became a nullity on that date

and unenforceable by either party thereafter. *Valley Dew Co. v. Messner,* 50 Colo. 451, 455, 115 Pac. 531. A party to a contract cannot treat it as binding and rescind it at the same time. *Chadbourne v. Davis,* 9 Colo. 581, 13 Pac. 721.

We have not overlooked the fact that in July, 1942, after the termination of the alleged contract, the company shipped three harvesters to defendant Meyers at Hugo, Colorado, and in a letter dated July 18, 1942, instructed him that one of the machines was to be delivered to the Fruhling Motor Company at Flagler; at the same time it wrote the latter company to the same effect and stated, "if Mr. Hartwell wants this machine let him have it. If he doesn't want it, then sell to anyone you wish." The Company did not, by the giving of the above instruction to its agent, in any manner revive the cancelled contract, but merely gave the plaintiff the first chance to purchase the harvester if he so desired. Meyers testified that he did not receive the letter containing the instruction to deliver one harvester to Fruhling, and since Fruhling was not present to receive the harvester, all three harvesters delivered to Meyers were later sold to other parties. None of the essential facts necessary for a proper determination of the issues with respect to the cancellation and termination of said contract is disputed, and under such circumstances, the trial court properly determined that there was no contract between the parties for the sale of an additional harvester to the plaintiff; consequently the latter could not recover, and there can be no damages for the breach of a contract that did not exist. The court was fully justified in directing the verdict in favor of the defendants. If a verdict had been rendered for the plaintiff on the undisputed facts disclosed by the record herein, it would have been the duty of the court to set it aside. 17 C.J.S., page 1271, section 611; *Morath v. Perkins,* 86 Colo. 101, 278 Pac. 611; *Tisdel v. Bank,* 90 Colo. 114, 6 P. (2d) 912; *First Nat. Bank v. Henning,* 112 Colo. 523, 150 P. (2d)

790; *Landis v. McGowan*, 114 Colo. 355, 165 P. (2d) 180.
The judgment of the trial court is accordingly affirmed.

Mr. Justice Hilliard and Mr. Justice Luxford concur.