**HOOPER et al. v. BELL.**

No. 11812.

Court of Civil Appeals of Texas.
San Antonio.

April 7, 1948.

Rehearing Denied May 5, 1948.

Magus F. Smith, Samuel L. Oakleaf and E. A. McDaniel, all of McAllen, for appellants.

L. A. Smith, of Mission, and Tom L. Hartley, of Pharr, for appellee.

SMITH, Chief Justice.

This is a suit brought by Everett Bell, plaintiff, against Warren Hooper, Marko Dizdar and Barney Horvich, doing business as the Phar-Tex Fruit Company. United States Casualty Company of New York, surety upon a bond executed for Phar-Tex Fruit Company, in conformity with the Texas Citrus Growers' Act, Article 118b, Vernon's Ann.Civ.Stats., Article 1700a—3, Vernon's Ann.Penal Code, was also named as defendant. Trial was to a jury and judgment rendered against the defendants, including the surety company, for the sum of $5,000. An additional recovery of $2,627.21, against the owners of Phar-Tex Fruit Company was also allowed.

All defendants have appealed. Hooper, Dizdar and Horvich will hereinafter be referred to as defendants, as in the trial court. The dates and times mentioned

refer to the 1946–47 citrus fruit season in the Lower Rio Grande Valley of Texas. The events pertinent here took place during the period of time from October, 1946, up to and including February, 1947.

On October 18, plaintiff and defendants entered into the following contract:

"Phar-Tex Fruit Company

Growers, Packers, Shippers of Citrus Fruit.

Phone 118 P. O. Box 534

Pharr, Texas

Date 10/18/1946

Bought of Everett Bell, Tel. 6018F14

Kind of Produce, Grape Fruit & Oranges as listed below

Clear trees of all fruit by Feb. 15/47.

Probable Harvesting Date, Weather Permitting—

*Ring Pick 80 & up now and again Dec. provided justifiable.*

Buyer not liable for damages caused by any Act of God prior to harvesting. Owner or Seller hereby warrants that the commodities covered by this contract are not mortgaged and seller hereby states that he has not been induced or persuaded to sell such commodities at the price herein named by any representation as to the market by buyer but has made his own independent investigation of same, and further that he has not been induced or persuaded by buyer to breach any contract heretofore executed by seller covering the same commodities. This contract, including the probable harvesting date, is subject to all regulations of State and Federal Governments and laws.

Remarks: Formage basis:
 Marsh Pink — $55.00
 Foster Pinks — $55.00
 Early Oranges — $55.00
 Marsh White — $25.00

Weight P. S. Mission

All terms of this agreement have herein been reduced to writing.

/S/ Everett Bell—Grower

Seller, Owner

Agent

Fred W. Volz, Buyer."

Shortly after the execution of the contract, defendants harvested size eighty (to a standard fruit box) and larger from plaintiff's orchard.

About November 29th, plaintiff and defendants had conversations with reference to further picking of fruit. In connection therewith the jury found that on said date "Plaintiff Bell and Defendants Hooper and Dizdar entered into an agreement that Bell's entire grove could be picked for size 96s and larger grapefruit."

On November 30th, defendants started picking fruit from the Bell orchard, but plaintiff discovered that instead of taking 96s and larger, defendants were picking 80s and larger. Bell called the defendant Horvich and "asked what was the reason for making a deal with him to pick 96s, and without consulting (him) coming out and picking 80s." According to Bell, Horvich then asserted the right to pick any size fruit any time he wanted to.

Bell testified that he refused to allow defendants to pick 80s unless they also took the smaller fruit; that Horvich said that he didn't want this smaller fruit and "he (Horvich) told me to send the trucks home."

Shortly thereafter, Bell received a letter which stated: "Due to your refusal to permit the Phar-Tex Fruit Company of Pharr, Texas, to pick fruit on your citrus grove, you have breached your Contract of October 18th, 1946, with this Company. This is to inform you that the Phar-Tex Fruit Company is no longer bound by the terms of this Contract. Please return your copy of such Contract to this Company immediately."

Defendants contend that under the contract they were entitled to pick the fruit at any time so long as they cleaned the trees by February 15th, and that plaintiff's action of November 30, 1946, amounted to a repudiation of the contract which authorized defendants to treat the same as no longer effective.

In line with this contention it is asserted that the oral agreement of November 29th (as found by the jury) was of no effect because it was not supported by a consideration, and evidence relating thereto was admitted in violation of the parol evidence rule.

The position of the parties and the trial court's ruling is made clear by the following excerpt from the Statement of Facts:

Mr. Hartley (plaintiff's attorney):

"If the Court please, I expect to elicit from Mr. Volz, the witness, substantially the following line of testimony to the effect that on or about the 28th day of November that he, the witness, Fred Volz, acting as agent for the Defendants, approached Bell and persuaded him to allow the Defendants to harvest sizes 96s and larger from his citrus grove, with the assurance that the Defendants would live up to their contract which they had heretofore entered into on October 18, 1946, and assured him that they would clean all the trees of all fruit by February 15th. And that on the 29th day of November the Defendants, Marko Dizdar and Warren Hooper, and the witness came to the orchard of the Plaintiff and in the presence of the witness the defendants assured Plaintiff that they would so live up to their contract and clean all trees by February 15th and explained to Plaintiff that there was at that time a demand for small fruit and it would be an accommodation to them if he would allow them to pick 96s and larger at that time.

"Mr. McDaniel: If the Court please, we object to such testimony insofar as the same is intended to, or has the purpose of varying the terms of the original contract; and also object to the same insofar as it may be contended or have for its purpose the making of a new contract limiting the rights of the Plaintiff under the original contract, for the reason that it is not shown to have any consideration and would merely be an attempt to show a new contract based upon no valuable consideration or else an effort to change the terms of a written contract, and also on the further grounds that it is not shown by the testimony that Mr. Volz had any authority, either actual or apparent, to make any harvesting contract such as shown or to change the terms of the original contract theretofore made. This objection does not go to the proposition of objecting to showing that 96s were picked or that the parties agreed that they

would pick 96s at any particular date. It goes to the proposition of asking such— of using such changes to show either a new contract or the variation of the terms of the old contract.

"The Court: The objection of the Defendants will be overruled."

It seems to us that the all important question which arose is this: Did Bell by refusing to allow defendants to pick 80s or better on November 30th, repudiate the contract? On this point the supplementary agreement or negotiations of November 29th are of importance. We may assume for the present purpose that under the written contract, the defendants were entitled to pick any size fruit at any time they desired. Had there been no subsequent negotiations or agreements, Bell's action in refusing to allow defendants to pick 80s or better would come close to a repudiation of the contract. However, if there had been a subsequent agreement as to 96s, Bell's refusal to allow defendants to pick 80s assumes a different aspect. The refusal is referable to subsequent agreement relating to 96s and not to the original written agreement. And this is true regardless of the technical sufficiency of the supplemental agreement, for the issue here is not one of unauthorized variation from the terms of a contract, but, rather, a question of whether or not a contract has been repudiated.

The contract involved was upon a printed form prepared for and used by defendants in their purchases of grapefruit and oranges during the 1946-47 fruit season. The words, "Ring Pick 80 & up now and again Dec. provided justifiable." (italicized in the contract above set out) were written into the contract immediately after the printed words: "Probable Harvesting Date, Weather Permitting."

The main controversy centers around these words. Defendants contend that "now and again Dec." were plainly stated as *probable* harvesting dates and the clear import of the agreement was that the fruit could be picked at any time.

Plaintiff makes some contention that having picked the orchard for 80s at the time the contract was made, defendants were

not entitled to pick 80s again until December, and the judgment could be supported upon the theory that a peremptory instruction for plaintiff would have been proper.

The trial judge considered that there was a jury issue involved relating to the alleged agreement of November 29th. From what has been said, it follows that, in our opinion, the trial judge was correct in his analysis. While it might be said that under a proper construction the contract gave defendants the right to harvest the fruit at any time they wished to do so, yet, the use of such words as "probable harvesting date" and "provided justifiable" may also be considered as indicating future negotiations between the parties as to when the harvesting trucks should actually enter the orchard. This is not a wholly unreasonable construction. The phrase, "when justifiable," could refer to market conditions, additional growth of the fruit since the previous harvesting of 80s, the condition of the orchard as to irrigations and other matters.

Bell's testimony was that he considered defendants' action in taking only the 80s or larger a violation of the agreement of November 29th, and an action not permitted under the original sale's contract as he interpreted it. The jury did not find that Bell intended to repudiate the sale's contract with defendants.

■■■ In Steinlein v. Blaisdell, Jr., Co., Tex.Civ.App., 44 S.W. 200, 202, the Court said: "When an executory contract is once entered into, neither party can refuse to perform without incurring liability for the damages resulting from the breach of the contract. Of course, any such contract may be rescinded by consent; and where one party repudiates and abandons the contract the other may elect to treat the contract as rescinded and discharged. This right of election does not occur, however, until there has been a repudiation or abandonment of the contract. A contention over the terms of the contract, and a refusal to perform in a particular manner, or in some special feature, by one of the parties, would not show an abandonment of the contract authorizing the other party to elect to treat it as rescinded. The doctrine of such rescission is based upon the idea that both parties consent to the revocation or undoing of the agreement. 2 Pars. Cont. (5th Ed.) 678, 679; Smoot's Case, 15 Wall. 36 [82 U.S. 36, 21 L.Ed. 107]; Kimmerle v. Hass, 53 Mich. 341, 19 N.W. 26; Chadbourne v. Davis, 9 Colo. 581, 13 P. 721; 2 Benj.Sales, §§ 1015, 1016."

See also Beaumont Cotton Oil Co. v. Sanders, Tex.Civ.App., 203 S.W. 372; 10 Tex.Jur. 458, § 266.

■■■ In line with the authorities cited, we hold that under the jury finding and the circumstances disclosed by this record, the appellee, Bell, by refusing to allow defendants to harvest 80s or better on November 30th did not repudiate or disaffirm the contract so that defendants were no longer bound thereby.

■■■ Defendants contend that the trial court should have instructed a verdict in their favor or granted their motion for judgment non obstante veredicto for the reason that no proper measure of damages was shown. Defendants say that the damages should be fixed with reference to the market value of fruit on or about December 4th, at which time defendants notified plaintiff that they considered the contract at an end.

The amount of the judgment awarded by the trial court was determined by sales made during the month of February as compared with the contract price. The jury found that these prices were the best obtainable at that time and the usual and customary prices paid for such fruit at that time.

In the case of Texas Seed & Floral Company v. Chicago Set & Seed Company, 187 S.W. 747, writ refused, the Court said: "Where a contract for the sale of onions to be grown before time for performance was repudiated by the buyer, since one party cannot himself, by renunciation, rescind a contract, the seller could accept the repudiation at the time and sue for damages, or elect to consider the contract as still in force, treat the onions as the property of the buyer, and sell them at the time set for performance, damages being the difference between the price brought and the contract price."

The rule stated has been upheld in the recent cases of Green v. Franklin Dress Co., Tex.Civ.App., 137 S.W.2d 131, and Engelman, Inc. v. Sanders Nursery Co., Tex.Civ. App., 140 S.W.2d 500. See also 10 Tex.Jur. 454, § 264.

In this case Bell elected to keep the contract open until the time for performance had expired. His damages could properly be determined with reference to market conditions existing at that time.

■ Finally, defendants say that the trial court erred in refusing to instruct the jury to find for them and erred in overruling defendants' motion for instructed verdict, because the contract sued upon was so indefinite that it could not be enforced. The failure of the contract to specify the tract of land upon which Bell's orchard was situated is particularly emphasized.

While the contract involved is not as specific and clear in terms as could be desired, it was nevertheless the form prepared by defendants for use in purchasing oranges and grapefruit from the owners of citrus orchards. Further, it appears that defendants picked Bell's orchard for 80s or larger in October. It does not appear that there was any uncertainty as to the orchard or the fruit contemplated by the contract. 10 Tex.Jur. 181, § 105; 12 Am.Jur. 558, § 67; I Restatement of the Law, Contracts, 44, § 33. There is no question as to the statute of frauds or any similar enactment. We overrule this last contention of defendants.

All of defendants' points are overruled. The judgment of the trial court is affirmed.

MURRAY, Justice.

There are two reasons why I can not concur in the opinion of the majority. First, I think the contract is too vague, uncertain and indefinite as to the quantity of grapefruit and oranges purchased to be enforced, and, second, if there was a valid contract then it was breached by appellee when he refused to let appellants' hands pick fruit on November 30, 1946.

The subject matter of the contract is described as grapefruit and oranges "as listed below." There is no statement as to the quantity sold, it is not described as all the fruit grown by Everett Bell, or the fruit grown on the farm of Everett Bell, or the fruit to be grown upon any particular tract of land. There is a provision in the contract, "Clear trees of all fruit by Feb. 15/47." This might seem to indicate that the entire output was to be taken, but of what trees?

One of the necessary elements of a sales contract is that it must be certain as to the subject matter, so that the quantity purchased may be determined. Especially is this true where the seller sues the buyer for not accepting the quantity which he contracted to purchase. In this case the appellee sued strictly upon the alleged written contract. No customs or usages of the sale of citrus fruit were pleaded or proved. 37 Tex.Jur. p. 147, § 45; Fields-Shepherd, Inc. v. Armitage, Tex.Civ.App., 159 S.W.2d 985; Houston & T. C. Ry. Co. v. Mitchell, 38 Tex. 85; Weaver Bros. v. Jaggers, Tex. Civ.App., 42 S.W.2d 74; Price v. Weisner, 83 Kan. 343, 111 P. 439, 31 L.R.A.,N.S., 927; Price v. Atkinson, 117 Mo.App. 52, 94 S.W. 816; Durkee Famous Foods v. Selig Co., 48 Ga.App. 711, 172 S.E. 824; Continental Jewelry Co. v. May, 162 Miss. 873, 140 So. 525; Consolidated Flour Mills Co. v. Nunn, 122 Okl. 222, 254 P. 10.

Appellee did allege in his supplemental petition that he agreed with appellants on November 29th that they could pick his entire grove for 96s and larger. There is no consideration for this agreement other than that appellants agreed to live up to their contract, which, if there was an enforceable contract, they were already bound to do. He does not allege that the agreement was that they would pick the entire orchard for 96s and larger, but merely that they could do so. There can be no breach of a contract for not doing that which you merely have permission to do but are not bound to do. It occurs to me that this agreement was and is utterly immaterial.

If the original contract was a valid contract for the purchase of all the fruit in a certain orchard owned by appellee then appellants had a right to pick the fruit for 80s on the 29th day of November, 1946, and when appellee refused to let them do so, but, on the contrary, ordered the pickers out of his orchard, he breached the contract and appellants had a right to declare the con-·

:ract at an end. This they did promptly by the letter written December 4, 1946.

In my opinion, the judgment of the trial court should be reversed and judgment here rendered that appellee take nothing.