FLOW et al. v. FRIESEN.

No. 11830.

Court of Civil Appeals of Texas.
San Antonio.

Sept. 15, 1948.

Rehearing Denied Oct. 13, 1948.

Perkins & Floyd, of Alice, for appellants.

C. Woodrow Laughlin, of Alice, and George F. Manning, of San Antonio, for appellee.

NORVELL, Justice.

This is an appeal from a judgment rendered on a special issue verdict for $3,702.-00, against W. R. Flow, as principal, and United States Casualty Company of New York, as surety, and in favor of H. P. Friesen, the plaintiff below.

The appellants, W. R. Flow, a citrus fruit dealer, and the Casualty Company, which executed a surety bond for him in accordance with the provisions of the Citrus Fruit Growers Act, Article 118b, Vernon's Ann.Civ.Stats., present a total of eighteen points of error, which for briefing purposes are grouped into six divisions and will be discussed accordingly.

By the first group, embracing points Nos. 1, 4, 8, 9, 10, 11 and 15, it is asserted that the contract sued upon was too uncertain and indefinite to be enforced.

Appellant pleaded an agreement partly written and partly oral. The written memorandum involved reads as follows:

"Growers Copy

"No. 702 W. R. Flow Produce
 Falfurrias, Texas
 Purchase Agreement For Grapefruit
 And Oranges
 Date 10-28, 1946
Purchased from H. P. Friesen
Address—Premont, Tex.
Variety—Early oranges
F. O. B. Trees
Price $50.00 per ton

"Delivered Falfurrias Plant $——— per ton.
Estimated Date to Start Harvesting
Weather permitting 11-5-46
Seller hereby warrants that the fruit covered by this contract is not mortgaged or contracted to any other person, cooperative association or corporation, and that he has full right and authority to sell the same. Until harvested buyer is not liable for any action of the elements, and in case of damage or destruction by elements this agreement is Void in regard to that portion of the fruit not harvested. This contract, in-

cluding the probable harvesting date, is subject to all regulations of State and Federal Departments and Laws. Buyer will not accept any fruit other than that which is picked from the trees by his harvesting crews.

"Payments for fruit to be made by W. R. Flow Produce, regular check at any time after starting delivery or at any later date seller desires.

"Remarks: Fruit to be off by Jan. 1–1947.
 Signed H. P. Friesen
 Signed W. R. Flow Produce
 By W. R. Flow, Buyer"

This memorandum is very similar to that involved in the case of Hooper v. Bell, Tex.Civ.App., 210 S.W.2d 870, recently considered by this Court. However, parol evidence as to identity of the subject matter is probably stronger in this case.

■■■■ Friesen, the appellee, testified in detail with reference to his orchard and the species of citrus trees growing thereon. It was a tract of approximately 20 acres planted to early oranges, Valencias and some grapefruit. A chart of the orchard planting was introduced in evidence. According to Friesen, and he was uncontradicted in this particular, the term "early oranges" is used to designate those species which generally mature from October to Christmas, and include practically all varieties of oranges grown in the Texas citrus belt except Valencias, which mature later, around February.

In the minds of the parties there was no doubt as to the identity of the orchard, nor as to the species of the oranges involved. The record discloses that in October of 1946 Flow harvested and issued receipts for several truck loads of navel and pineapple oranges. In all he harvested some twenty-two tons of early oranges from the Friesen grove before the market took a severe drop in November of 1946.

Flow also testified that before he bought Friesen's oranges he inspected the orchard. He testified as follows:

"Q. You knew that there were small oranges on these trees, and that the outside oranges are usually small? A. Yes, sir.

"Q. There were 848 trees in that grove? A. Yes, sir, I guess so.

"Q. It is correct? A. Yes, as far as I know.

"Q. You examined all these trees? A. Yes, sir.

"Q. Did you see any small oranges? A. Yes, sir.

"Q. Did you see any large oranges? A. Yes, sir. * * *

"Q. You went all over that orchard before you made the agreement with him? A. Yes, sir.

"Q. You knew that he had big oranges and small oranges? A. Yes, sir.

"Q. Did he ever stop you from gathering oranges? A. No, sir.

"Q. Was it your original contract with Mr. Friesen to take his whole crop except a few trees he was going to keep for the local market? A. Yes, sir.

"Q. Your contract was to cover all of his trees except the 12 or 15? A. I do not remember 12 or 15.

"Q. Five or six you say? A. Yes, sir.

"Q. It covered his entire crop? A. Yes, sir, it covered his entire crop of early oranges.

"Q. Except those five or six? A. Yes, sir."

We think it abundantly clear from the above that Flow knew exactly what oranges he was buying and where they were located.

There is evidence in the record that Flow agreed that Friesen could reserve certain trees for the purpose of supplying the "home trade", that is, persons who would stop by the farm and want to buy small amounts of fruit. Friesen testified that 12 to 15 trees were reserved, while Flow's recollection, as above pointed out, was that only 5 or 6 were reserved. This did not render the contract invalid or unenforcible, and this circumstance did not enter into the assessing of the amount of damages, as will hereafter be pointed out under the discussion of a subsequent point. Crosby v. De Bord, Tex.Civ.App., 155 S.W. 647; Texas Hay Ass'n v. Angleton State Bank, Tex.Com.App., 291 S.W. 846.

We overrule appellants' points Nos. 1, 4, 8, 9, 10, 11 and 15. 12 Am.Jur. 558, § 67.

■ Appellants' fifth point is next presented. It is contended that the trial court's definition of the term "contract" was incomplete and insufficient. A contract was defined as being "an agreement between two or more parties to do or not to do a particular thing." The jury were further instructed that a contract may be partly in writing and partly oral. Bell v. Mulkey, Tex.Com.App., 16 S.W.2d 287. Under the facts and circumstances of this case no prejudice resulted to appellants. It appears definitely that a contract was made or an agreement attempted. There was no issue of lack or failure of consideration raised. The fact that the court did not instruct the jury with reference to "consideration" is immaterial. We overrule appellants' fifth point. Charles River Bridge v. Proprietors Warren Bridge, 11 Pet., U.S., 420, 572, 9 L.Ed. 773; Sturges v. Crowhinshield, 4 Wheat, U.S., 122, 197, 4 L.Ed. 529; 10 Tex.Jur. 13.

■ By appellants' second, sixth, and seventh points it is contended that the bond executed by the surety, United States Casualty Company of New York does not cover a situation such as that disclosed in this case, that is, a breach of contract by the principal. It is asserted that the surety is only liable when the principal has failed to pay for citrus fruit which he has actually received. We overrule this contention upon the wording of the statute. Article 118b, § 4, Subd. b, Vernon's Ann.Civ. Stats.

■ It is contended by appellants' twelfth and sixteenth points that the trial court erred in allowing a recovery of $150 for three tons of oranges which fell upon the ground and were lost between January 1, 1947, the date that Flow agreed to complete harvesting and the time that Friesen re-sold the early oranges to the Donna Fruit Company, which was about the 15th of January.

It appears that after November 1st, Flow harvested no more oranges from Friesen's place. After the contract date for harvesting expired, Friesen notified Flow, by registered letter, that he intended to sell the early oranges for what he could get for them and charge Flow with the difference between this amount and the contract price. Flow then took no action and the fruit was sold for $13 per ton to the Donna Fruit Company.

■ Appellants object to appellee's testimony of estimates of the amount of fruit lost as a result of its not being harvested within the time specified in the contract. Friesen seems to have acted with reasonable dispatch in minimizing the damages, while Flow apparently did nothing to protect himself in this regard. Naturally and necessarily, testimony as to the amount of fruit lost by its falling to the ground because of late harvesting was given as an estimate. But it is not so uncertain that a jury finding can not be based thereon. Friesen was familiar with the orchard and estimated that six tons had been lost by a failure to harvest by January 1st. As above pointed out, the jury found that three tons were lost. In our opinion the finding has support in the evidence. Shell Pipe Line Corporation v. Svreck, Tex.Civ. App., 37 S.W.2d 297; International & Great Northern Ry. Co. v. Mudd, Tex.Civ. App., 194 S.W. 960. We overrule appellants' points Nos. 12 and 16.

■ By their third, thirteenth and seventeenth points, in one group, and their fourteenth and eighteenth points in another group, appellants complain of the sufficiency of the testimony to support the greater portion of the award of damages. The award amounted to $32 per ton for 111 tons of oranges, being the difference between the contract price, $50.00 per ton, and $18.00 per ton, which the jury found to be the market price for early oranges at the time Flow failed to comply with his contract of purchase, that is, on January 1, 1947.

W. R. Flow testified that at the time he made the contract with Friesen the market price of early oranges was $50 a ton. Presumably, this was at or in the vicinity of Falfurrias, Texas, where Flow had his place of business. Later, according to Flow, the price went to $60 per ton. The price started dropping about November 15th, when it went to $35 per ton. It kept sliding until it was $20 per ton at Christmas and went to $15 per ton right after Christ-

mas. In view of this testimony, appellants are in no position to complain of the jury's finding of $18.00 per ton as the market price on January 1, 1947. The orchard involved was located about seven miles from Falfurrias. The Falfurrias market applied to the town and the farms and orchards in the vicinity thereof. Sales of citrus fruit on the tree are generally made at so much per ton on the tree, the buyer to do the harvesting. That practice was carried out in this case. We overrule appellants' points Nos. 14 and 18. Merchants Cotton Oil Co. v. Acme Gin Company, Tex.Civ.App., 284 S.W. 680.

As to appellants' complaint that there was no evidence as to the number of tons harvested from the orchard by the Donna Fruit Company, it appears that appellee testified without objection that the Donna Fruit Company had purchased 222,716 pounds of oranges from him. According to the testimony, none of these oranges came from the 12 to 15 trees which Friesen reserved from the original contract of sale under the circumstances heretofore mentioned.

The trial court after intimating that the certificates of weight issued by the Public Weigher were admissible, finally excluded them. Objection was made "on the ground that it is asking us to take the testimony of the weigher to show they were actually weighed." The court sustained this objection to the weights and all. Appellee, by cross-point, asserts that this was error and in view of Article 5696, Vernon's Ann. Civ.Stats., we are inclined to agree with this contention. However, we are of the opinion that the jury's finding of 111 tons is supported by evidence which was properly admitted. Friesen in support of his statement that some 222,716 pounds had been harvested and sold after January 1, 1947, stated that it was his practice to keep account of the number of field boxes harvested from his orchard and had done so in this case. He testified that he knew how much each box would weigh and that by this method he checked the weight of 111 tons given him by the Donna Fruit Company. His estimate agreed with the Fruit Company's basis of payment within less than a ton. This evidence supports the jury's finding of 111 tons harvested after appellant Flow had failed to carry out his contract. A field box is a standard container. Boxes and bushels of oranges have a recognized range of weights as do bushels of wheat or corn, and by counting the containers a reasonably accurate estimate of weight may be made. We overrule appellants' points Nos. 3, 13 and 17.

What has been said disposes of all of appellants' points. No reversible error being disclosed, the judgment appealed from is affirmed.